**ELGIN, JOLIET AND EASTERN RAILWAY COMPANY, Plaintiff,**

v.

**UNITED TRANSPORTATION UNION, a voluntary association, individually and as representative of the class of conductors and brakemen employed by plaintiff, and as representative of the class of yardmen and yardmasters employed by plaintiff, Defendants.**

No. 72 C 919.

United States District Court, N. D. Illinois, E. D.

April 28, 1972.

Supplemental Opinion May 23, 1972.

R. Newton Rooks, Hackbert, Rooks, Pitts, Fullagar & Poust, Chicago, Ill., for plaintiff.

John J. Naughton, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

McLAREN, District Judge.

This case comes before the Court on the application of plaintiff ELGIN, JOLIET AND EASTERN RAILWAY COMPANY (E, J&E) for a preliminary injunction restraining a threatened rail strike by defendant union. A temporary restraining order was granted on April 12, 1972 (with a bond of $1,000) and extended on April 19. A hearing was held on stipulated evidence on April 22. For the reasons set forth below, a preliminary injunction will be issued, on terms hereinafter set forth, pending the appointment of a Special Adjustment Board and its decision on a "minor dispute" under Section 3 of the Railway Labor Act, 45 U.S.C. § 153.

### The Present Contracts

The collective bargaining agreements (Plaintiff's Exhibits 1 and 2) between the parties provide that it is the intent of the agreements to follow national railroad patterns, and the conditions thereof, resulting from national or regional bargaining in matters relating to rates of pay, vacations and holidays. The parties also agreed not to serve any

"Section 6" notices to establish new agreements or change existing ones except as notices were served between the railroads and unions on a national or regional basis. See 45 U.S.C. § 156.

In addition, the parties agreed (Plaintiff's Exhibit 1, ¶ 7; Plaintiff's Exhibit 2, Art. 16, ¶ 3) to serve no Section 6 notices relating to hours of service, "arbitraries" (extra pay for unusually difficult or unpleasant jobs), special allowances, and daily, weekly, monthly or other guarantees. In this connection, the agreements herein provide that if the national agreement between railroads and unions provides for changes or improvements in such items, the union will have the option of adopting such changes provided it accepts the conditions attached to such changes.

### The 1972 National Contract and the Current Controversy

On January 27, 1972 a new national agreement was reached between the railroads and the unions (Plaintiff's Exhibit 6). On January 31, 1972 the E,J&E proposed to apply the entire agreement to employees represented by defendant United Transportation Union (UTU). The UTU's position was that the parties had agreed to follow national patterns only with respect to rates of pay, holidays and vacations, and the union was willing to implement the national agreements only in those respects (Plaintiff's Exhibit 7A). The UTU refused to automatically adopt any work rules changes contained in the 1972 national agreement and demanded that any changes in this area be done "under the provisions of the Railway Labor Act," presumably Section 6.

The parties met several times in an attempt to resolve their differences, but were unable to do so. Thereupon, the E,J&E threatened to restore the rates of pay to the December 31, 1969 level and remove the six cents an hour above standard which was to be preserved during the term of the parties' December 31, 1967 agreement (Plaintiff's Exhibit 8, p. 3).

However, the E,J&E also asked the union to join with it in submitting the dispute to a Section 3 board, 45 U.S.C. § 153. The issue, as propounded by the railroad, was whether the parties' agreement was amended to include the entire national agreement, or was not affected at all by the national agreement. The UTU responded by requesting the E,J&E to apply immediately the wage increases set forth in the national agreement with one exception—extra pay for use of communication systems (Plaintiff's Exhibit 10). The union threatened to strike if its demands were not met. It also declined to have a Section 3 board entertain the dispute, on the ground that it was a "major" dispute, without the board's jurisdiction.

Thereafter, the E,J&E filed this action. The parties have filed briefs and an extensive oral argument was held. The railroad contends this is a minor dispute under 45 U.S.C. § 153 and this Court has jurisdiction to enjoin the defendants from striking pending the adjustment board's decision.

The union takes the position that the parties basically have a "stand-by agreement" under which the national pattern agreed upon by the major railroads and unions is to apply to the agreements among these parties, subject to certain conditions and options. Since the E,J&E refuses to honor that agreement, the union argues, the only course remaining to it is to strike, which it claims the right to do. Alternatively, the union maintains that if the Court deems this to be a "minor dispute" and enjoins the defendants from striking, equity requires that the plaintiff be ordered to pay the national rates of pay pending the adjustment board's decision.

### "Minor" Nature of Present Dispute

█ Although this case has been made unduly complex by the railroad's

shifting positions on the issue of contract interpretation, it appears to the Court that the dispute between the parties boils down to whether the entire January 1972 national agreement is covered by the "stand-by agreement" clause of the parties' agreement (Plaintiff's Exhibit 1, ¶ 6; Plaintiff's Exhibit 2, Art. 16, ¶ 2), or whether parts of it come under the "union option clause" (Plaintiff's Exhibit 1, ¶ 7; Plaintiff's Exhibit 2, Art. 16, ¶ 3). This Court finds as a matter of law that the parties have agreed upon the national pattern insofar as rates of pay, vacations and holidays are concerned, and that the present controversy is a "minor" dispute under the Railway Labor Act. See Elgin, J. &. E. Ry. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945); Rutland Ry. v. Brotherhood of Locomotive Engineers, 307 F.2d 21, 33–34 (2d Cir. 1962). Therefore, it is appropriate that the union be enjoined from striking in order to preserve the jurisdiction of the adjustment board. See Brotherhood of R.R. Trainmen v. Chicago R. & Ind. R.R., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed. 2d 622 (1957).

It is this Court's duty, however, to consider the hardships on the workers who must await the adjustment board's decision without recourse to striking. See Brotherhood of Locomotive Engineers v. Missouri-Kans.-Tex. R.R., 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1379 (1960). It was conceded at the hearing in this matter that defendants' members are being paid wages below the national standard; however, the railroad assured the Court that it is willing to pay the wages established in the recent national agreement, provided that the conditions contained in the January 1972 national agreement go into effect with the new wages. The union insists that certain portions of the national agreement are objectionable and that it is not contractually obligated to accept them.

█ It is not within this Court's jurisdiction to decide the details of this contractual dispute on the merits. See Brotherhood of Locomotive Engineers v. Missouri-Kans.-Tex. R.R., *supra*. And, normally, the Court will not issue a preliminary injunction except to preserve the status quo. But when necessary and proper, a federal court may issue a mandatory writ. See Toledo, A.A. & N.M. Ry. v. Pennsylvania Co., 54 F. 730, 741 (6th Cir. 1893) (Taft, J.). In this case it appears that the public interest will be served—and equity will be accorded the contending parties—by requiring them to carry out their basic contract by putting the entire national agreement into effect, pending the adjustment board's decision on their minor dispute concerning certain specific items in that agreement.

Accordingly, a preliminary injunction will be issued.

## SUPPLEMENT TO MEMORANDUM OPINION

On April 28, 1972, this Court issued a preliminary injunction and Memorandum Opinion in this matter. On May 5, 1972, defendants filed motions to supplement the Memorandum Opinion and injunction by adding findings of fact and conclusions of law; to clarify or modify said documents; or in the alternative, to reconsider and vacate the preliminary injunction. Plaintiff filed an answer opposing this motion and both parties have filed briefs.

The recitals contained in this Court's preliminary injunction, together with the Court's Memorandum Opinion of April 28th, as supplemented by this memorandum, constitute this Court's findings of fact and conclusions of law. Defendants' motions are in all other respects denied.

Defendants' post-injunction briefs rely heavily upon the recent decision in Associated General Contractors of Illinois v. Illinois Conference of Teamsters, 454 F.2d 1324 (7th Cir. 1972). That case

involved a "labor dispute" which arose in connection with the transition from one collective bargaining agreement to another—in effect, a "minor dispute"—over which the court upheld the union's right to strike. However, in that case, there was no provision for compulsory arbitration; the unions had expressly reserved the right to take "economic recourse," and they had exhausted contract procedures before engaging in self-help.

■ In the instant case, the parties likewise have a basic contract—by reason of their "stand-by agreement"—and they have a "minor dispute" with respect thereto. But, for such disputes, the Railway Labor Act provides a compulsory arbitration procedure, the administrative machinery of 45 U.S.C. § 153. Accordingly, *Associated General Contractors* is inapposite.

■ The Court is unable to find that plaintiff has proceeded in bad faith and is subject to the "unclean hands" sanctions of Section 8 of the Norris-LaGuardia Act, 29 U.S.C. § 108, as defendants suggest. Indeed, as previously noted, the parties met several times in an effort to resolve their differences and, although both sides ultimately resorted to threats, it was the plaintiff which urged submission of the dispute to a Section 3 board. But even if plaintiff lacked clean hands, Section 8 of Norris-LaGuardia "may be overcome by a balancing of interest, particularly where it is the public interest involved." Illinois Central R. Co. v. Brotherhood of Railroad Trainmen, 398 F.2d 973, 976 (7th Cir. 1968).

Under all the circumstances, a preliminary injunction is necessary here in order to preserve the jurisdiction of the Section 3 board and, tailored as it is on the basis of equitable considerations, the injunction heretofore issued is appropriate to that end. Illinois Central R. Co. v. Brotherhood of Railroad Trainmen, *supra*, at 977.