William E. **HILBERT**, Joseph Mauer, C. W. Curtis and Harry M. Howell, (a) as members, and as such, as representatives of Division No. 25 of the Grand International Brotherhood of Locomotive Engineers; and (b) as representatives of the General Committee of Adjustment of the Indiana Division of the Pennsylvania Railroad of the Grand International Brotherhood of Locomotive Engineers; and (c) as members, and as such, as representatives of the Grand International Brotherhood of Locomotive Engineers, Plaintiffs-Appellants

v.

**PENNSYLVANIA RAILROAD COMPANY**, Defendant-Appellee.

No. 13203.

United States Court of Appeals
Seventh Circuit.

May 29, 1961.

Edward J. Fillenwarth, Indianapolis, Ind., Harold N. McLaughlin, Clarence Weisell, Harold A. Ross, Cleveland, Ohio, of counsel, for appellants.

William A. Wick, Indianapolis, Ind., Hermon M. Wells, Richard N. Clattenburg, Philadelphia, Pa., for appellee.

Before HASTINGS, Chief Judge, DUFFY, Circuit Judge, and MERCER, District Judge.

DUFFY, Circuit Judge.

This suit was brought primarily to enjoin defendant railroad company from putting into effect certain Notices and Advertisement Bulletins dated April 18, 1960, which were to become effective April 26, 1960. Had the Notices and Advertisement Bulletins been carried out, it would have resulted in a reassignment of engineers from defendant's terminal at Terre Haute, Indiana, to defendant's terminal at Indianapolis, Indiana. Both terminals are now and were then established terminals for road train and engine crews.

Defendant filed a motion to dismiss or for summary judgment. Holding there were no genuine issues as to any material facts, the Court granted defendant's motion for summary judgment.

This suit was commenced in an Indiana State Court on April 25, 1960. On the same day, that Court issued a restraining order without notice enjoining defendant from putting into effect the Notices and the Advertisement Bulletins hereinbefore described. Thereafter, the suit was removed to the United States District Court.

The individual plaintiffs are members of Division No. 25 of the Grand International Brotherhood of Locomotive Engineers, the latter being a national or international labor organization. The complaint alleged that for approximately one hundred years last past there has been a home terminal for engine crews of defendant's road at Terre Haute, Indiana, as follows: a) pool freight engine crews operating between Terre Haute and Indianapolis; b) pool freight engine crews operating between Terre Haute and East St. Louis; c) regularly assigned and extra passenger service locomotive engineers operating between Terre Haute and Indianapolis and between Terre Haute and East St. Louis, and an extra list of locomotive engineers with their Home Terminal at Terre Haute servicing locomotive engineers in categories (a), (b) and (c).

Under existing agreements reached by collective bargaining, engineers in freight and passenger service generally are paid a fixed amount per mile of their individual runs. They receive, however, a minimum allowance known as a basic day, equivalent to the payment for one hundred miles. The distance from Terre

Haute to Indianapolis is 78 miles. The engineers on this run have been paid on the basis of 100 miles although they actually had run 78 miles. The payment for the 22 miles' difference is referred to as a constructive allowance.

Defendant determined that by arranging its freight and passenger service between Indianapolis and East St. Louis to be operated by engineers having their home terminal at Indianapolis, payment for the 22 miles not actually run would be eliminated. Also, a stop at Terre Haute for the purpose of changing engine crews would no longer be necessary. Defendant proceeded to abolish the pools and extra lists at Terre Haute, and new runs were advertised covering the home terminal at Indianapolis to perform the same service. No prior consultation was had with the representatives of the engineers, defendant claiming that same was not necessary, and asserting that on numerous occasions in the past, such changes have been made under the existing agreement without prior negotiation.

Plaintiffs point out that Division No. 25 is composed primarily of locomotive engineers who reside in Terre Haute or the immediate vicinity thereof, and that Indianapolis has not been a home terminal for them. In addition to the great inconvenience of finding new homes in Indianapolis and the loss of "constructive allowances" they claim their seniority rights would also be affected.

One of the many regulations in effect for many years between the union and defendant reads: "5–P–1. Established terminals will not be changed nor new terminals created except by agreement between the interested local chairman and the Superintendent."

No attempt was made by plaintiffs to submit the present dispute under existing grievance procedures although the District Court found they had a right to do so.

On November 2, 1959, prior to the present dispute, the defendant served on all the organizations representing its employees, a notice under section 6 of the Railway Labor Act, 45 U.S.C.A. § 156, proposing a general revision of the collective bargaining agreements covering the defendant's employees. This notice was served as part of a national movement by substantially all the Class I carriers in the United States. These proposals are currently before a presidential commission.

The big issue in this suit is whether a major dispute or a minor dispute is involved. Plaintiffs insist the action of defendant in changing working conditions which had long been in existence, and creating new conditions of employment, created a major dispute; that it violated the *status quo* provisions of the Railway Labor Act and should have been enjoined by the District Court.

Section 2 of the Railway Labor Act (45 U.S.C.A. § 151a) states as among the five general purposes of the Act:

> "(4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; (5) to provide for the prompt and orderly settlement of all disputes growing out of grievences or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions."

These two classes of disputes are clearly distinguished. In general, the difference is between what are regarded traditionally as major and minor disputes in the railway labor field.

"Major disputes" encompass those differences arising out of proposals for new contracts or of changes in existing contractual or legal obligations and relations. They arise where there is no collective bargaining agreement or where it is sought to change the terms of one. In such a case, the issue cannot be resolved by reference to an existing agreement.

"Minor disputes", on the other hand, are grievances or other differences arising out of the application or interpretation of an existing collective bargaining agreement. The dispute relates ei-

ther to the meaning or proper application of a particular provision with reference to a specific situation. See Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 722, 65 S.Ct. 1282, 89 L.Ed. 1886.

■ The Act marks out two distinct routes for settlement of the two classes of disputes. As to both, the Act requires the parties enter into negotiations as the first step towards settlement of the controversy (§ 2, Second, 45 U.S.C.A. § 152, Second). Beyond this initial stage the procedures diverge. Major disputes go first to mediation (§ 5, First, 45 U.S.C.A. § 155, First); if that fails, to acceptance or rejection of arbitration (§ 5, First, 45 U.S.C.A. § 155, First); and finally to possible presidential intervention (§ 10, 45 U.S.C.A. § 160). If all this fails, compulsory processes are at an end, and either party may resort to self help. No authority is empowered to decide the dispute unless the parties agree to arbitration.

■ In minor disputes, if negotiation fails, either party may submit the controversy to the National Railroad Adjustment Board (§ 3, First (i), 45 U.S.C.A. § 153, First (i) ). The awards of the Board are final and binding on the parties (§ 3, First (m), 45 U.S.C.A. § 153, First (m) ). This is a form of compulsory arbitration.

■ Generally, the Norris-LaGuardia Act prohibits the issuance of an injunction in cases involving any "labor dispute" (29 U.S.C.A. § 104). In Order of Railroad Telegraphers v. Chicago & N. W. Ry. Co., 362 U.S. 330, 80 S.Ct. 761, 4 L.Ed.2d 774, the Court held the Norris-LaGuardia Act prevented the issuance of an injunction to enjoin a strike in a railway labor case involving a major dispute. However, in Brotherhood of Railroad Trainmen v. Chicago River & Ind. R. R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622, a case involving a minor dispute, the Court stated that the Norris-LaGuardia Act cannot be read alone in matters dealing with railway labor disputes. The Court said, 353 U.S. at page 40, 77 S.Ct. at page 640: "There must be an accom-

modation of that statute and the Railway Labor Act so that the obvious purpose in the enactment of each is preserved."

The two cases last cited each involved an attempt to enjoin a threatened or actual strike. In the case at bar, we deal with the reverse situation. Here, the plaintiffs brought suit to require the railroad to maintain the *status quo* pending settlement of the dispute.

■ Nothing in the Norris-LaGuardia Act prevents a federal court from granting an injunction to require an employer to retain the *status quo*. However, there is nothing in the Railway Labor Act that imposes such an obligation on the railroad in the case of a minor dispute. The *status quo* provisions of the Act are found only in the sections dealing with major disputes.

In Order of Railway Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318, the union sought an injunction to prevent the replacement of some of its members. It was alleged this was a violation of an existing collective bargaining contract and, therefore, a violation of section 6 of the Railway Labor Act, 45 U.S.C.A. § 156. The Supreme Court held that an injunction should not issue to prevent the proposed action since the question of whether the contract was violated was referable to the Adjustment Board. Justice Rutledge dissented and argued the railroad should have been required to maintain the *status quo*. The majority rejected this contention.

In a footnote in the Chicago River case, 353 U.S. at page 42, 77 S.Ct. at page 641, the Court said: "The Norris-LaGuardia Act has been held to prevent the issuance of an injunction in a railway labor case involving a 'major dispute'. Brotherhood of Railroad Trainmen v. Toledo, P. & W. R. Co., 321 U.S. 50, [64 S.Ct. 413, 88 L.Ed. 534]. In such a case, of course, the Railway Labor Act does not provide a process for a final decision like that of the Adjustment Board in a 'minor dispute' case."

Another informative footnote appears in Brotherhood of Locomotive Engineers

v. Missouri-Kansas-Texas R. R. Co., 363 U.S. 528, 531, 80 S.Ct. 1326, 1329, 4 L.Ed. 2d 1379: "We did not decide in Chicago River, and we do not decide here, whether a federal court can, during the pendency of a dispute before the Board, enjoin a carrier from effectuating the changes which gave rise to and constitute the subject matter of the dispute, independently of any suit by the railroad for equitable relief. As we read the order of the District Court, this case does not involve independent relief for the union."

In the case at bar, the plaintiffs do seek independent relief in the event that we should hold that this case presents a minor dispute.

In contending that this case involves a major dispute, plaintiffs rely principally upon the section 6 notice issued by the defendant railroad on November 2, 1959. Both parties agree this notice created a major dispute. From this, plaintiffs contend that the notices of April 18, 1960, and the actions taken pursuant thereto, which are the center of the controversy in this case, involve some of the same proposals covered by the November 2, 1959 notice and, therefore, violated the *status quo* provisions of section 6 of the Act.

A case, in many respects similar to the one here under consideration, is Rutland Ry. Corp. v. Brotherhood of Locomotive Engineers, D.C.Vt., 188 F.Supp. 721. There, as here, the railroad served the same November 2, 1959 notice on the union. The railroad then posted notices abolishing certain existing trains and creating new runs. In an action to enjoin a strike, the Court held the question whether the railroad had unilateral power to abolish and establish train runs which resulted in a reduction in work force, and the movement of a terminal for going on and off duty, was a minor dispute. The Court also held the fact that the carrier gave a section 6 notice to the operating Brotherhoods on November 2, 1959, did not extinguish the underlying minor dispute or preclude submission to the Adjustment Board.

■ We agree with the District Court that the section 6 notice of November 2, 1959 is not involved in this case. The dispute here relates to the meaning of Regulation 5–P–1. That rule remains in effect. The railroad contends that under its existing collective bargaining agreement, it has the unilateral authority to transfer crews between established terminals. The plaintiffs argue the contract gives no such authority, and that Regulation 5–P–1 would be violated if the railroad carried out its announced program. It is obvious this dispute involves a conflict over the interpretation or application of the provisions of the existing contract. We hold that a minor dispute is presented.

We have considered the case of Order of Railroad Telegraphers v. Chicago & No. W. Ry. Co., 362 U.S. 330, 80 S.Ct. 761, 4 L.Ed.2d 774, upon which plaintiffs strongly rely. On page 341 of 362 U.S., on page 767 of 80 S.Ct., the Court refers to a dispute " * * * relating to a major change * * *." It would seem this use of the word "major" is confusing as surely a major dispute does not depend on the number of people involved. In any event, we do not understand the Court in Telegraphers has, by the language used in that opinion, modified the rule it followed in previous decisions.

■ An additional point should be mentioned, although neither side relies heavily upon it—the dispute has not been submitted to the Adjustment Board. The District Court found that either party had a right to submit same, but the plaintiffs sought an injunction thereby avoiding the grievance procedures of the contract and the Act.

In Manion v. Kansas City Terminal Ry. Co., 353 U.S. 927, 77 S.Ct. 706, 1 L.Ed.2d 722, the Court, in a *per curiam* opinion, vacated an injunction granted by a state court in a minor dispute because the dispute was not pending before the Adjustment Board. We think the decision in Manion means that a court should not permit the use of its injunctive powers in cases involving minor dis-

putes where such disputes could have been submitted to the Adjustment Board.

The District Court did not err in refusing to grant the injunction as requested by plaintiffs.

The judgment of the District Court is Affirmed.