**PUERTO RICO INTERNATIONAL AIR-
LINES, INC., Plaintiff,**

v.

**INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE
WORKERS et al., Defendants.**

Civ. No. 540–73.

United States District Court,
D. Puerto Rico.

July 26, 1973.

McConnell, Valdés, Kelley, Sifre, Griggs & Ruiz-Suria, San Juan, P. R., for plaintiff.

George L. Weasler, Pedro E. Purcell Ruiz, Joseph Calderon Cruz, Santurce, P. R., for defendants.

## MEMORANDUM AND DECISION

PESQUERA, District Judge.

This is a petition by Puerto Rico International Airlines, Inc. (hereinafter PRINAIR) for injunctive relief against an alleged strike by its mechanics and related employees, the labor organization which represents them, International Association of Machinists and Aerospace Workers, Local Lodge 2201 (hereinafter I.A.M.), and said Union's local Grand Lodge Representative, Juan L. Maldonado. PRINAIR is requesting this Court for a back to work order to the defendants.

At the conclusion of three days of hearing, the following facts had been established by the evidence presented.

Defendant I.A.M. was certified to represent PRINAIR's mechanics and related employees. On or about August 3, 1972, it initiated its efforts to commence negotiations for a collective bargaining agreement. Its letters, sent on that date and on September 8 and 27, 1972 and on October 12, 1972, were not answered by PRINAIR. The Union tendered its Section 6 Notice (45 U.S.C.A. Section 156) to PRINAIR on October 25, 1972.

On November 6, 1972 Mr. Jaime S. Carrión, President of PRINAIR, sent a letter to Mr. José A. Ramos, I.A.M.'s Representative, expressing that "under these circumstances and considering the different circumstances in which we find ourselves, we do not feel that we are in a position to make a proposal to you".

During the months of November, December and January the attempts made by the Union to engage PRINAIR in negotiations for a collective bargaining agreement were fruitless. PRINAIR's officers and/or attorneys were not able to submit its Section 6 Notice or were not available for meetings and discussions of the proposal submitted by the Union. It was not until January 16, 1973 that PRINAIR submitted its Section 6 Notice to the defendants. From February 21 through May 4, 1973 various meetings were held to negotiate a collective bargaining agreement but no concrete or effective counter-proposals were made by PRINAIR. In fact, the Court finds that from August 3, 1972 through May 4, 1973 PRINAIR did not

exert reasonable efforts to arrive at agreements and, on the contrary, appeared to be merely delaying or giving the Union a runaround while purporting to be meeting with the Union for the purpose of collective bargaining.

On or about May 5 PRINAIR discharged one of its mechanics, Mario Orozco, who was a member of the negotiating committee designated by the Union; and on May 29 it discharged another mechanic, Juan G. Rivera Cortijo, who also happened to be a member of the negotiating committee designated by the Union.

Although the parties met on May 29 and 30, 1973, their discussions were substantially limited to the discharge of the two members of the negotiating committee and the Union adopted the position that further negotiations would not be held unless the two above mentioned employees were reinstated. Further attempts by both parties to agree on re-initiating their negotiations for a collective bargaining agreement crashed against a wall of stubbornness on both sides.

On Saturday June 9 the Defendant Union called a strike and plaintiff's employees represented by the Defendant Union ceased working.

Although the Union alleges that no such strike took place and that in fact what has occurred is that PRINAIR has locked out its mechanics and related employees, such contention is untenable in view of the testimony presented by the proper Union.

The following day, June 10, 1973, PRINAIR, pursuant to Section 6 of the Railway Labor Act (45 U.S.C.A. Section 156) requested the mediatory services of the National Mediation Board. This request was received by the National Mediation Board the following day, June 11. It has been docketed and a mediator will be assigned to mediate the dispute consistent with prior commitments of the Board.

On that same date, June 11, 1973, plaintiff offered to submit to binding arbitration the issue as to the two discharged employees. This position was reinstated by PRINAIR during the hearings held in this case. This offer to arbitrate the discharge of the two mechanics has been refused by the Union which, through its National Representative, Mr. Juan L. Maldonado, insists on the reinstatement of the two employees as a condition to its members going back to work.

The precipitate nature of the discharge of the two employees who were members of the Union's negotiating committee, and the timing of said discharges, was the incident which brought to an end all negotiations over the terms of a collective bargaining agreement. Regardless of the merits of such discharges, as to which the Court expresses no opinion, the Court finds that resort to such actions was or should have been expected to have the expressed results.

The evidence presented has further established that PRINAIR has been forced to discontinue a number of its international routes because of the Union's strike against it and that it has been suffering as well as the general public, irreparable damages.

The Railway Labor Act has established mandatory methods and processes for the peaceful resolution, settlement and adjustment of any dispute arising between carriers and their employees. Disputes arising under the Railway Labor Act are commonly classified as "major disputes" or "minor disputes". In general, a major dispute concerns the obtaining of a new collective bargaining agreement or the amendment of the terms of an existing agreement, whereas a minor dispute is one that is concerned with grievances or with the meaning or proper interpretation of a collective bargaining agreement. Minor disputes are required to be settled through conference and, if necessary, compulsory arbitration before an adjustment board without resort by any party to self-help. In the case of major disputes, on the other hand, the parties are required to submit to successive proce-

dures designed to induce agreement but the compulsions go only to insure that those procedures are exhausted before resort can be had to self-help, and no authority is empowered to decide the dispute unless the parties themselves agree to arbitration (48 Am.Jur. 712).

■■ Minor disputes are clearly enjoinable (Brotherhood of R.R. Trainmen v. Chicago River & Indiana R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622). Major disputes, on the other hand, are enjoinable only when certain conditions precedent have not been followed. In other words, although the Railway Labor Act does not restrict the right of a union to strike during the existence of a major dispute, a union cannot strike during the pendency of the mandatory procedures contemplated by the Railway Labor Act; that is, until the exhaustion of the negotiation, mediation and, if resort is had, the establishment and report of a Presidential Emergency Board. Until those conditions are met, any premature strike is enjoinable (Elgin, Joliet & Eastern R. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886).

■ In light of this statutory framework, it has long been held that the compulsion of injunctive relief is available against any strike during the period when the National Mediation Board is called upon to mediate a dispute or during the existence of a Presidential Emergency Board, and for thirty days after a report from such Board or after the National Mediation Board has "cut loose" the parties. (Chicago, Rock Island & Pacific R. Co. v. Switchmen's Union, 2nd Cir., 292 F.2d 61; Norfolk & P.B.L.R. Co. v. Brotherhood of Railroad Trainmen, 4th Cir., 248 F.2d 34, cert. denied, 355 U.S. 914, 78 S.Ct. 343, 2 L. Ed.2d 274; Pan American World Airways, Inc. v. Flight Engineers' International Association, 2nd Cir., 306 F.2d 840; American Airlines v. The Air Line Pilot Association, 169 F.Supp. 777, 787). It is thus clear that injunctive relief is readily available against a union striking over a minor dispute, or striking over a major dispute before it has exhausted the mandatory procedures set forth in the Act.

■ In light of the circumstances present in the instant case, there is no doubt that Defendant Union failed to exhaust and avail itself of the necessary procedure set forth in the Act, without which it could not resort to self-help. In fact, the Union has also failed to exhaust "every reasonable effort" to settle the controversy. Defendant Union's strike is therefore a violation of the Act and its enjoinment is not prevented by the Norris-LaGuardia Act (29 U.S.C., Section 101 et seq.). The issuance of an injunction necessary to accomplish the purposes of the Railway Labor Act is not prohibited by the Norris-LaGuardia Act. It is an established exception to its prohibition when one of the parties seeks to resort to self-help in a major dispute prior to the exhaustion of the mandatory bargaining procedure set in the Railway Labor Act. (Brotherhood of Locomotive Engineers v. Baltimore & O.R.R., 372 U.S. 284, 83 S.Ct. 691, 9 L. Ed.2d 759; Brotherhood of R.R. Trainmen v. Chicago River & Indiana R. Co., 353 U.S. 30, 77 S.Ct. 365, 1 L.Ed.2d 622; Chicago & Northwestern Railway v. United Transportation Union, 402 U.S. 570, 91 S.Ct. 1731, 29 L.Ed.2d 187).

■ If viewed independently, the issue as to the discharge of the two employees would constitute a minor dispute for which the Act has provided a system of compulsory adjustment. However, when examined in the light of all the circumstances present in the dispute herein considered, said issue is found to be so intermingled with the process of negotiating the proposed collective bargaining agreement, that the Court must conclude that the same is an inseparable part of the existing major dispute. The fact that the two discharged employees were members of the Union's negotiating committee, and the lack of desire on the part of PRINAIR to complete a collective bargaining agreement, has caused the Court to hesitate before enjoining the strike, undisputably in violation of the Railway Labor Act. How-

ever, under traditional equitable considerations the Court has power to frame the relief herein being granted so that justice may be imparted to both parties. Conditions set out in the granting of equitable relief may be made its price when the injunctive powers of the Court are invoked and the conditions are necessary to do justice to all concerned (Locomotive Engineers v. M.K.T.R. Co., 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1379). The Court has discretion not only to restore the status quo, but to determine as well how the status quo should be restored. Suitable relief and sanctions must be imposed so that bargaining now long delayed may go forth.

For the reasons and the authorities set forth above, it is hereby ordered:

1. That Defendants International Association of Machinists and Aerospace Workers, Local Lodge 2201, and Juan L. Maldonado, their officers, agents, servants, employees and members, and all persons acting in concert with them, be and are hereby restrained from in any manner either directly or indirectly, violating the provisions of the Railway Labor Act by striking or otherwise engaging in work stoppage. Defendant International Association of Machinists and Aerospace Workers, Local Lodge 2201, is further ordered immediately upon receipt of this Order, to notify its members and plaintiff's employees of the terms of this Order.

2. That the defendants, their members, their officers, agents, employees, attorneys and any and all persons acting in concert with them, are hereby enjoined from authorizing, inducing, causing participation in, or otherwise aiding and abetting in the aforesaid work stoppage.

3. That Defendant Union, its officers, agents, employees, attorneys and any and all persons acting in concert with it, take all necessary steps within its authority power and influence to obtain compliance with the foregoing provisions of this preliminary injunction.

4. That this preliminary injunction shall be effective from this 26th day of July, 1973 and shall continue in full force and effect or until substituted by a permanent injunction.

5. That this preliminary injunction is issued on condition that plaintiff file in this Court a bond in the amount of $5,000.00 and reinstate employees Mario Orozco and Juan Rivera Cortijo to their former or substantially equivalent employment, but without back pay, pending decision of the arbitrator of the question of the reasonableness of their discharge.

6. That the condition herein imposed on plaintiff to reinstate employees Orozco and Rivera Cortijo is suspended until defendants file in this Court a bond in the amount of $5,000.00.

7. That the Defendant Union and plaintiff are ordered to submit to arbitration within ten (10) days the question of the reasonableness of the plaintiff's discharge of said two employees. If after five days from the date of this Order, the parties have not agreed upon an arbitrator, the Court shall appoint one.

8. Pending the decision by the arbitrator on the issue of the discharge of the two employees, the bond filed by the Defendant Union will respond for any and all wages which said employees may receive from plaintiff, if the arbitrator's award is in favor of plaintiff.

It is further ordered that within five (5) days of this Order, the parties commence meetings and exert every reasonable effort to reach and make a collective bargaining agreement. Each party is urged to cast aside its adamant position and to engage in good faith negotiations so that conciliation may succeed for the benefit of all concerned.

It is so ordered.