Stephen BARABAS et al., Plaintiffs,

v.

PRUDENTIAL LINES, INC. and Delta Steamship Lines, Inc., Defendants,

and

Radio Officers Union, United Telegraph Workers, AFL–CIO, Intervenor.

No. 78 Civ. 1998 (MP).

United States District Court,
S. D. New York.

May 30, 1978.

Edwin A. Steinberg, New York City (Lydia Tugendrajch, New York City, of counsel), and Bredhoff, Gottesman, Cohen & Weinberg, Washington, D. C. (Michael H. Gottesman, George H. Cohen, and Robert M. Weinberg, Washington, D. C., of counsel), for plaintiffs.

Simpson, Thacher & Bartlett, New York City (John W. Ohlweiler, and Ernest J. Collazo, New York City, of counsel), and Barrett, Smith, Schapiro, Simon & Armstrong, New York City (David Simon, New York City, of counsel), for defendant Prudential Lines, Inc.

Surrey, Karasik, Morse & Seham, New York City (Martin C. Seham, Andrew E. Zelman, and Roger H. Briton, New York City, of counsel), and Kullman, Lang, Inman & Bee, New Orleans, La. (Samuel Lang, New Orleans, La., and John B. Waldrip, Memphis, Tenn., of counsel), for defendant Delta Steamship Lines, Inc.

Jaffe, Cohen, Crystal & Mintz, New York City (Allen B. Breslow, New York City, of counsel), for intervenor.

CANNELLA, District Judge:

Motion for a preliminary injunction is denied.

This Court has jurisdiction pursuant to 29 U.S.C. § 185 and 28 U.S.C. §§ 1331, 1337.

## THE FACTS

The present controversy, even in its preliminary stage, involves the interplay of various and competing governmental policies. Plaintiffs, citing Section 301 of the Labor-Management Relations Act of 1947 ["LMRA"], 29 U.S.C. § 185, urge the interest in settling labor disputes through arbitration and enforcing labor agreements negotiated through collective bargaining. Defendants' artillery consists of the prohibition against unfair labor practices, codified in Section 8(e) of the National Labor Relations Act ["NLRA"], 29 U.S.C. § 158(e); the strong national concern over restraints of trade, as found in Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and Section 15 of the Shipping Act of 1916, 46 U.S.C. § 814; and the National Maritime Administration's interest in the continuing viability of a United States merchant fleet.

Factually, this case arises out of contracts, valued in excess of $100,000,000, for the sale of thirteen vessels between shipowners that are parties to collective bargaining agreements with competing unions. The nineteen individual plaintiffs are radio officers and/or radio electronics officers [1] presently employed by Prudential Lines, Inc. ["Prudential"]. These plaintiffs are in the bargaining unit of Prudential employees represented by plaintiff American Radio Association, AFL–CIO ["ARA"]. The plaintiff union, ARA, has been for a number of years the exclusive bargaining representative of the radio officers on United States flag ocean-going vessels owned and operated by Prudential. Since 1969, section 62 of the collective bargaining agreement between Prudential and ARA has provided as follows:

In order to preserve the jobs and job rights of Radio Officers and Radio Electronics Officers in the employment pool covered by our collective bargaining Agreement and to protect and maintain the wages, pension rights and other economic benefits and the working conditions provided such Officers under said Agreement:

The Company agrees with respect to any vessel which is presently under or may hereafter during the life of the collective bargaining Agreement be covered thereby, that if during the term of said Agreement, it is sold or transferred (including charters of any kind) in any manner to any other business entity for operation under U.S. flag (but not including a vessel which the Company may be operating under a bareboat charter and the charter is terminated) the vessel shall be sold or transferred (including charters of any kind) with the complement of the employees who either were or shall be provided by the Union in accordance with the terms of the Agreement, or such number as may be agreed upon between the Union and the Transferee.

The Company obligates itself to obtain for the benefit of the Union a written undertaking with the Union executed by the business entity to which the vessel has been sold or transferred (including charters of any kind) that for the full term of the Agreement all of its terms and provisions shall apply to said vessel except as hereinbefore provided and that said business entity will fully comply with all of the terms and provisions of the Agreement, including the provision contained herein. The Union agrees as well to be bound by the Agreement as amended.

This provision shall be deemed of the essence of the collective bargaining Agreement and in the event of any violation thereof the no-strike provision of the Agreement shall not be applicable.

1. Hereinafter the term "radio officers" shall include radio electronics officers.

The Radio Officers Union, United Telegraph Workers, AFL–CIO ["ROU"], which intervened in the present action on consent of all parties, is the exclusive bargaining agent for all radio officers on vessels owned by Delta Steamship Lines, Inc. ["Delta"]. The collective bargaining agreement between Delta and ROU establishes a hiring hall and requires that Delta obtain radio officers exclusively through the ROU hall.

On December 30, 1977, after months of negotiations, Prudential and Delta executed contracts for the sale of thirteen vessels from Prudential to Delta. Believing itself bound by its agreement with ROU, Delta insisted that the following provision be included in each of the sales contracts:

> Nothing contained in this Agreement shall require the Buyer or the Seller to employ in any part of its business any individual currently or formerly employed by the other. . . . The Buyer and the Seller do not by this Agreement or otherwise assume any obligations resulting from any collective bargaining agreement or other understanding heretofore.

The closing date was set for sometime prior to June 1, 1978, subject to approval by the United States Maritime Administration. Such approval having been received on or about May 16, 1978, the closing date is scheduled for May 31, 1978.

Upon execution of these contracts, ARA sought to enforce its rights under section 62 of its collective bargaining agreement with Prudential, culminating on April 18, 1978, with ARA's invocation of the provision respecting "final and binding" arbitration of disputes over "the interpretation or performance" of the collective bargaining agreement. On April 29, 1978, Prudential filed unfair labor practice charges with the National Labor Relations Board ["NLRB"], alleging that ARA had violated, *inter alia*, Section 8(e) of the National Labor Relations Act, 29 U.S.C. § 158(e).

Fearful that the Prudential-Delta deal might close before the arbitrator rendered its decision, plaintiffs brought suit in this Court on May 2, 1978, requesting preliminary injunctive relief. Subsequently, on May 9, 1978, the arbitrator issued a decision in favor of the union. The award reads in pertinent part:

> . . . . Prudential Lines, Inc., is hereby directed that, before transferring any of such vessels to Delta Lines, Inc., (1) it take all steps necessary to assure that such sale or transfer . . . be made with the complement of radio officers permanently assigned to such vessels and (2) obtain from Delta Steamship Lines, Inc., a written undertaking that the existing economic terms and conditions of employment of such radio officers be maintained for the term of the collective bargaining agreement between ARA and Prudential Lines.

*In re American Radio Assoc. and Prudential Lines, Inc.* (Opinion and Award, May 9, 1978) (David E. Feller, Arbitrator). Consequently, on May 11, 1978, plaintiffs filed an amended complaint, see Fed.R.Civ.P. 15(a), seeking both immediate and final enforcement of the arbitration award. Plaintiffs also urged that this Court advance and consolidate the trial on the merits with the preliminary injunction hearing, pursuant to Fed.R.Civ.P. 65(a)(2), contending that the enforcement claim raised solely legal questions.

The parties hotly debated this issue both on papers and in oral argument, recognizing that consolidation would eliminate plaintiffs' burden of establishing irreparable injury. In contrast to plaintiffs' characterization of the issues as essentially legal, defendants cataloged a host of factual questions necessitating a scope of discovery too broad to fit within the rigid timetable set by the May 31st closing date. The Court declined to rule immediately, preferring instead to await further clarification of these allegedly relevant issues of fact.

On May 22, 1978, the Regional Director of the NLRB approved a Settlement Agreement, executed by the ARA, in response to the charges filed by Prudential. Although section 62 of the Prudential-ARA collective bargaining agreement was found, on its face, violative of § 8(e) of the NLRA, the Agreement states:

Nothing in this agreement prohibits the American Radio Association, AFL–CIO, from seeking to enforce, or enforcing, the Award of Arbitrator David E. Feller, said Award being dated May 9, 1978, because to do so would not constitute unlawful conduct within the meaning of Section 8(e) of the Act.

The next day, following a morning of further testimony and argument, the Court determined, in its discretion, not to proceed under Fed.R.Civ.P. 65(a)(2), but to label the hearing one for a preliminary injunction only. Although the opinions of the arbitrator and the NLRB Regional Director operated to eliminate or simplify certain issues, the Court was loathe to curtail to a matter of days a trial that might require much fuller exploration and examination—especially where the stakes were so high for all concerned.

## DISCUSSION

■ Under the standards presently applicable in the Second Circuit, a party seeking preliminary injunctive relief must establish "either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly" in his favor. *Triebwasser & Katz v. American Tel. & Tel. Co.,* 535 F.2d 1356, 1358 (2d Cir. 1976); *accord, Gulf & Western Indus., Inc. v. Great Atl. & Pac. Tea Co.,* 476 F.2d 687, 692–93 (2d Cir. 1973).

After hearing testimony and argument over a period of several days, in addition to reading the voluminous materials submitted by all parties, the Court concludes that plaintiffs have not met their burden of proving probability of success on the merits and have failed to persuade the Court that the balance of hardships tips decidedly in their favor. Accordingly, their application for a preliminary injunction must be denied.[2]

*Probability of Success on the Merits*

■ As a general rule, when parties have agreed to final and binding arbitration of a dispute, the award of the arbitrator is entitled to judicial enforcement. In the labor context, this general rule is codified in § 301 of the LMRA, 29 U.S.C. § 185. *See, e. g., Truck Drivers Union v. Riss & Co.,* 372 U.S. 517, 519, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963); *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 451, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

Accordingly, the award of Arbitrator Feller must be enforced unless the arbitrator exceeded his authority or the basis of the award is an illegal agreement.

There was brief oral argument by defendants' counsel regarding the authority of David E. Feller to conduct the Prudential-ARA arbitration. Though sensing this point to have been abandoned, the Court notes that Arbitrator Feller's opinion as well as Plaintiffs' Third Memorandum (filed May 17, 1978) respond satisfactorily to what the Court deems defendants' contentions.

Defendants' claims of illegality require more elaborate discussion. Specifically, it is claimed that the award is illegal under Section 8(e) of the NLRA, 29 U.S.C. § 158(e); Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1; and § 15 of the Shipping Act of 1916, 46 U.S.C. § 814.

*The Unfair Labor Practice Claim*

Section 8(e) of the NLRA reads in pertinent part:

It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer . . . agrees to cease . . . doing business with any other person, and any contract or agreement entered into . . . containing such an agreement shall be to such extent unenforceable and void . . . . .

The Supreme Court has instructed that, in determining whether § 8(e) has been violat-

---

**2.** It is therefore unnecessary to decide to what extent the more stringent requirements of Sec-

tion 7 of the Norris-LaGuardia Act, 29 U.S.C. § 107, apply to the facts of this case.

ed, the relevant inquiry is "whether, under all the surrounding circumstances, the Union's objective was preservation of work for [the employer's] employees, or whether the agreements . . . were tactically calculated to satisfy union objectives elsewhere." *National Woodwork Mfrs. Ass'n v. NLRB,* 386 U.S. 612, 644, 87 S.Ct. 1250, 1268, 18 L.Ed.2d 357 (1967). In *NLRB v. National Maritime Union,* 486 F.2d 907 (2d Cir. 1973), *cert. denied,* 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974), the Second Circuit struck down a collective bargaining agreement provision, substantially identical to section 62 of the Prudential-ARA agreement, as violative of Section 8(e). Since the NMU clause in question gave the union "the right to continue manning the ship from its hiring hall," it was held "beyond 'work preservation' of the kind sanctioned in *National Woodwork* . . . ." *Id.* at 913.

■ That the NLRB Regional Director in the Settlement Agreement found section 62 facially violative of § 8(e) does not end the inquiry for the Regional Director also stated that enforcement of Arbitrator Feller's award would not be unlawful within the meaning of the statute. It should be noted, however, that the practical effect of the arbitration award is a clear majority in favor of ARA at the representational election scheduled for the near future. In determining the ARA's motivation in seeking arbitration, therefore, the question arises whether and to what extent the result achieved is determinative of the goal sought. Additionally, suspect of the ARA's actual motives though the Court may be, it is unwilling to disagree with the opinion of the Regional Director. Whether or not the ARA's actual goal was representation, its Statement of Dispute to the Arbitrator demands the rights of ARA employees permanently assigned to Prudential vessels, the arbitration award limits itself to protection of these rights, and the NLRB has stated

that enforcement of the award would not constitute an unfair labor practice. Consequently, at this stage of the proceedings, the Court finds that ARA probably would succeed on the merits of its argument that enforcement of the award would not violate Section 8(e) of the NLRA.[3]

*The Antitrust Claims*

Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, declares illegal "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade . . . ." Defendants claim that enforcement of the arbitration award would violate this section because such enforcement would operate to restrain the sale and transfer of vessels between Prudential and Delta.

■ The question whether plaintiffs' enforcement of their rights under the Prudential-ARA collective bargaining agreement, via the arbitration award, qualifies for a nonstatutory labor exemption, see *Connell Constr. Co. v. Plumbers & Steamfitters Local 100,* 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975), is difficult to resolve on this record. As observed in *Connell,*

> labor policy requires tolerance for the lessening of business competition based on differences in wages and working conditions. . . . Labor policy clearly does not require, however, that a union have freedom to impose direct restraints on competition among those who employ its members.

*Id.* at 622, 95 S.Ct. at 1835 (citation omitted).

■ Plaintiffs claim that the award does no more than protect the jobs of permanent employees and preserve their existing economic benefits. Defendants counter that the result of such protection and preservation (a restriction upon Prudential's ability to trade with other vessel owners) and the means by which the restriction was obtain-

---

**3.** The Court rejects defendants' argument that section 62 may not be enforced *to any extent* because complete enforcement of the provision would violate § 8(e). This is not a case where the limited relief sought is contrary to or incon-

sistent with the union's objectives in including the section in the collective bargaining agreement. *See United Optical Workers, Local 408 v. Sterling Optical Co.,* 500 F.2d 220 (2d Cir. 1974).

ed (an agreement with Prudential) operate to strip the award of any exempt status it otherwise may have deserved. Other considerations include the degree, if any, to which Delta could take on ARA radio officers without violating its collective bargaining agreement with ROU and the attenuation of restraint upon defendants and other shipowners should the award be enforced.

It appears to the Court that the restraint on trade resulting from even the arbitrator's narrow interpretation of section 62 is different from and more severe than the restraints sanctioned under the labor exception to the antitrust laws. Collective bargaining agreements that standardize wages and working conditions indirectly affect price competition in the industry. Nonetheless, the non-statutory exemption sanctions such agreements. *Id.* at 622, 95 S.Ct. 1830. By contrast, enforcement of the arbitration award would directly restrict Prudential's ability to sell or transfer its vessels. The award effectively restrains Prudential from selling to a potential buyer whose employees are presently represented by ARA's rival, ROU. *Commerce Tankers Corp. v. National Maritime Union*, 553 F.2d 793, 805 (2d Cir.) (Lumbard, J., dissenting), *cert. denied*, 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977).

Having found a substantial probability that section 62, even as interpreted, would not qualify for a non-statutory labor exemption, the Court goes on to consider the likelihood that the restraint imposed would be found unreasonable under the antitrust laws.

In this regard, the Court must balance the public interest in a competitive domestic maritime industry against the public interest sought to be protected by the labor laws. In the maritime industry, prospective purchasers who seek to add to their fleets or to replace older vessels, but who are bound by collective bargaining agreements to recognize unions other than ARA, are barred from purchasing ARA vessels along with their full complement of ARA members. Thus, that portion of the American flag fleet under contract with ARA can be sold only to shipowners bound by similar contracts or to foreign shipowners. As to labor policy objectives, it is arguable that these will be served by refusing to enforce the arbitration award. Because of the restriction, American shipowners may be unable to purchase the ships they want at the time they want them for operation under the American flag. Consequently, the prospective American purchaser may forego the purchase or transfer his operations to a foreign flag. This interference with alienability of vessels will operate to reduce the efficiency of the domestic maritime industry, with a consequent loss of employment opportunities for American union seamen.

The Court therefore finds a distinct probability that the arbitration award will be held to constitute an unreasonable restraint of trade—both because of its anticompetitive effect on commerce and also its propensity to undermine the labor objectives it purports to serve.

*The Shipping Act Claim*

Section 15 of the Shipping Act, 1916, 46 U.S.C. § 814, requires "every common carrier by water, or other person subject to this chapter" to "file immediately with the [Federal Maritime] Commission" a copy of "every agreement with another such carrier or other person subject to this chapter . . . controlling, regulating, preventing, or destroying competition." Any such agreement not so approved is considered unlawful and unenforceable.

Defendants claim that section 62 of the Prudential-ARA collective bargaining agreement operates to restrain trade and is therefore unenforceable because, concededly, the agreement was not filed with the Commission. This argument fails for a variety of reasons.

The Maritime Commission does not view unions as persons "subject to this chapter." *Federal Maritime Comm'n v. Pacific Maritime Ass'n*, 435 U.S. 40, 50 n. 14, 98 S.Ct. 927, 55 L.Ed.2d 96 (1978). The effect of this is twofold: first, unions are not obligated to file such agreements with the Commission; and second, the statute is in-

applicable to an otherwise covered agreement between a union and a single employer, *id.* at 61, 98 S.Ct. 927.

Consequently, if section 62 is an agreement subject to filing with the Maritime Commission, it was Prudential that breached § 15 of the Shipping Act when it failed to do so. As noted by plaintiffs, Prudential's failure to file the agreement made it impossible for the Commission to approve it. This Court would have great difficulty in allowing Prudential to resist enforcement of Arbitrator Feller's award by reason of its own delinquency.

Plaintiffs also conjecture that Prudential never filed the agreement because it recognized that no such filing was required. This is so, plaintiffs urge, because the agreement is solely between the ARA and Prudential. Defendants contend instead that the agreement is one entered into between ARA and the Maritime Service Committee, Inc., a multi-employer group of which Prudential and other common carriers are members. Even were this so, plaintiffs respond, the Shipping Act still would not apply because the only promises are between union and employer, not among employers *inter se.*

There was much testimony concerning the issue whether the agreement is a single- or multi-employer document. After considering the evidence and the discussion of this argument in the parties' briefs, the Court is not persuaded that the collective bargaining agreement was subject to the filing requirement of section 15, regardless of whether section 62 otherwise would be included within its scope.

■ Due to the likelihood that defendants will prevail in their argument that enforcement of the arbitration award would violate the antitrust laws, however, the Court cannot find that plaintiffs will probably succeed on the merits. Nonetheless, the Court concludes that plaintiffs have raised "sufficiently serious questions going to the merits to make them a fair ground for litigation." *Triebwasser & Katz v. American Tel. & Tel. Co.,* 535 F.2d 1356, 1358 (2d Cir. 1976). Under this prong of the preliminary injunction standard, plaintiffs may obtain such relief only if the balance of irreparable hardships tips decidedly in their favor.

*Irreparable Injury to Plaintiffs*

Quite simply, if Prudential is permitted to sell its ships to Delta, without regard to the arbitration award, the individual plaintiffs will lose their particular jobs permanently. Even if the Court ultimately finds the arbitration award entitled to enforcement, plaintiffs will have won a hollow victory. After title to the vessels passes to Delta, Prudential could not be compelled to reinstate the individual plaintiffs to positions on vessels no longer within Prudential's control. Nor could the Court bind Delta to an arbitration award based upon a contract to which Delta was not a party.

The present record is replete with evidence as to substitute positions available to the plaintiffs both with ARA and through the ROU hiring hall. For example, ROU's president testified that the individual plaintiffs could obtain shipping assignments through the ROU hiring hall within two weeks of registration, and permanent assignments within six months.

On the other hand, substitute positions would not make plaintiffs whole. For those who work at sea, the vessel serves as both office and home, and these permanently assigned radio officers legitimately expect not only their employment but also their respective lifestyles to continue. Eleven of the nineteen plaintiffs work on board the only four United States flag passenger vessels presently in service. Working conditions aboard such ships are superior to those on freighters: the food is better and more varied; the time schedules are more certain; and officers may socialize with passengers during their off-duty hours. Radio officers wait many months to obtain permanent assignments on passenger vessels.

Even among the freighters, there are differences in age, route and type of vessel important to those who work and live at sea. For example, the thirteen vessels due

to be transferred to Delta comprise almost the entire Prudential fleet of ships with South American trade routes. The good weather and calm seas occasioned on such ships compare most favorably with the conditions encountered on ships travelling the North Atlantic.[4]

■ The Court therefore finds that all individual plaintiffs would probably suffer irreparable harm were they to lose their particular jobs with no reasonable hope of regaining them.[5] *See Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. R.*, 363 U.S. 528, 534, 80 S.Ct. 1326, 4 L.Ed.2d 1379 (1960).

*Irreparable Injury to Defendants*

Delta has indicated that, if the arbitration award is enforced, it will refuse to close on its sales contracts with Prudential. Indeed, Delta has insisted from the beginning of the negotiations on the inclusion of a provision releasing it of any obligation to employ the individual plaintiffs so as not to breach its own collective bargaining agreement with ROU. This concern over labor strife, in addition to the belief that such sales restrictions are injurious to the domestic maritime industry, has caused Delta to threaten to forego a deal that would otherwise result in pre-tax net profits estimated to exceed $10,000,000. per year.

If the arbitration award is enforced, even on a temporary basis, it is therefore likely Prudential will suffer irreparably and substantially from the loss of the Prudential-Delta contracts in that alternative purchasers may be unavailable. As noted earlier, the number of prospective purchasers would be severely restricted because the ten maritime vessel operators subsidized by the United States are divided between those

with contracts with ARA and those whose radio officers are represented by ROU.

Additionally, in reliance upon the sales contracts, Prudential has reduced its staff, sent formal termination notices to its agents and begun winding up its South American operations, thus irrevocably committing itself to major business changes.

If Prudential ultimately prevails on the merits, its damages will be difficult to calculate, and it is questionable whether the sale of the vessels ever will be consummated. If the sale does not go through, both Prudential and Delta will have lost an extremely advantageous business opportunity. *See National Maritime Union v. Commerce Tankers Corp.*, 411 F.Supp. 1224 (S.D.N.Y. 1976), *aff'd in part rev'd in part*, 553 F.2d 793 (2d Cir.), *cert. denied*, 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed. 280 (1977).

*Balancing the Hardships*

■ In addition to the interests of the parties already noted, there are competing public interests in the outcome of this dispute. The United States Maritime Administration has approved the transfer of the vessels. Such approval embodies a finding that the transaction is in the best interest of the United States Merchant Marine as well as the broader national interest. See 46 U.S.C. § 1101. In an *amicus curiae* brief to the Second Circuit in the *Commerce Tankers* case, the Maritime Administration argued that restrictions in sales among United States flag shipowners would operate to encourage sales to foreign fleets; depress the prices of American vessels; curtail expansion of United States flag fleets; drive small United States companies out of business; and diminish the ability of the United States Merchant Marine and its government-subsidized operators to com-

---

**4.** Of course, there is nothing in the collective bargaining agreement that would obligate either Prudential or Delta to continue operating the vessels along these specific routes.

**5.** As argued by defendants, the issue of plaintiffs' irreparable harm is not entirely free from doubt. Plaintiffs derive their rights in this action solely from a provision of the collective bargaining agreement between Prudential and

ARA. This agreement contains no provision guaranteeing lifetime employment. In fact, the agreement permits only 180 days of employment per year, and it is undisputed that some of the individual plaintiffs already have had their maximum employment for this period.

Additionally, the Prudential-ARA collective bargaining agreement is due to expire, by its terms, on June 15, 1978.

pete in this world-wide industry. See *National Maritime Union v. Commerce Tankers Corp.*, 457 F.2d 1127, 1132 n. 6 (2d Cir. 1972).

On the other hand, it is less clear that the competing public interest in collective bargaining would be advanced by enforcing the arbitration award. The interests of employees protected by the labor laws are not really served by enforcing restrictions that tend to destroy the employing industry. Additionally, the nineteen individual plaintiffs are among 736 employees currently on the vessels in question. Were the ships to remain idle during the resolution of this dispute, a significant number of jobs would be forfeited, at least temporarily.

None of the parties to this suit comes to the Court with clean hands. The individual plaintiffs and their union began the dispute seeking to enforce a contractual provision they now concede to be illegal. The ARA, ostensibly trying to preserve the jobs of its permanent employees, acknowledges that enforcement of the arbitration award would give the ARA a majority in the expanded Delta Fleet. In advocating the primary motive of job preservation, ARA thus attains the secondary objective of union representation.

Delta required from the outset of negotiations that Prudential ignore its contractual obligations to ARA. Thus, Prudential knew as early as July 1977 that consummation of the sale was conditioned on a breach of the collective bargaining agreement with ARA.

In sum, upon consideration of all the evidence and upon an assessment of the competing interests involved in the outcome of this dispute, the Court concludes that the balance of hardships does not tip decidedly in favor of the plaintiffs.

Accordingly, the motion for a preliminary injunction is denied.

So Ordered.