## BROTHERHOOD OF LOCOMOTIVE ENGINEERS ET AL. *v.* MISSOURI-KANSAS-TEXAS RAILROAD CO. ET AL.

No. 165. Argued April 20, 1960.—Decided June 20, 1960.

*Harold C. Heiss* argued the cause for petitioners. With him on the brief were *J. Hart Willis, Clarence E. Weisell, Wayland K. Sullivan* and *V. C. Shuttleworth.*

*M. E. Clinton* argued the cause for respondents. With him on the brief was *O. O. Touchstone.*

*Clarence M. Mulholland, Edward J. Hickey, Jr.* and *James L. Highsaw, Jr.* filed a brief for the Railway Labor Executives' Association, as *amicus curiae,* urging reversal.

*Walter J. Cummings, Jr.* filed a brief for the Bureau of Information of the Eastern Railways et al., as *amici curiae,* urging affirmance.

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

This case presents a question concerning the jurisdiction of a Federal District Court to impose certain conditions upon a strike injunction issued in a railway labor dispute.

The essential facts are not complicated. The respondent Railroads operate a 302-mile branch between Wichita Falls, Texas, and Forgan, Oklahoma. The line was originally operated with steam locomotives capable of only short runs, and this necessitated the stationing of five way-freight crews along the route. After longer-range diesel locomotives were purchased to replace the steam equipment, the Railroads issued general orders which doubled the length of the way-freight runs, thereby eliminating· the jobs of two of the five way-freight crews and changing the home or away-from-home terminals of the remaining crews.

The petitioner Brotherhoods, representing the engineers, firemen, conductors and brakemen affected, protested the issuance of the orders and invoked the services of the National Mediation Board. Nonetheless, the Railroads put the change into effect. After the Board advised the parties that it did not consider the dispute one subject to mediation, the unions called a strike. On the same day the Railroads filed a complaint for injunctive relief in the Federal District Court and obtained a temporary restraining order. The Railroads then submitted the dispute to the National Railroad Adjustment Board, to National Committees and Disputes Committees established by the collective bargaining agreements, and to the National

Mediation Board. They amended their complaint in the District Court to allege the various submissions.

After a hearing, the District Court granted the injunction pending decision by the Adjustment Board, but it did so upon certain conditions which are the subject of the controversy before us. These conditions required that the Railroads either (1) restore the situation which existed prior to the General Orders, or (2) pay the employees adversely affected by the orders, the wages they would have received had the orders not been issued.

Both sides appealed, the unions from the injunction against the strike, and the Railroads from the conditions requiring preservation of the *status quo*. The Court of Appeals sustained the injunction but vacated the conditions, holding that the District Court had no power to attach them. 266 F. 2d 335. In so holding, the Court of Appeals reasoned that imposition of conditions of this character involved a preliminary judgment on the merits of a "minor dispute," the resolution of which is committed by the Railway Labor Act, § 3 (i), 48 Stat. 1189, 45 U. S. C. § 153, to the exclusive jurisdiction of the Adjustment Board. The question of a district judge's jurisdiction to impose this type of condition upon an injunction issued to preserve the Adjustment Board's jurisdiction is both recurring and important in the field of labor-management relations. Consequently, we granted certiorari, but limited the grant to this issue.[1]

---

[1] The order granting certiorari limits our review to the following question:

"Whether a district court under circumstances where a dispute arising under the Railway Labor Act has been submitted by a railroad to the National Railroad Adjustment Board and an injunction against a strike by employees is sought on authority of *Brotherhood of Railroad Trainmen* v. *Chicago River and Ind. RR Co.*, 353 U. S. 30, may on the granting of an injunction impose reasonable conditions designed to protect the employees against a harmful change in work-

This Court held in *Brotherhood of Railroad Trainmen* v. *Chicago River & Ind. R. Co.*, 353 U. S. 30, that a Federal District Court may enjoin strikes arising out of "minor disputes"—generally speaking, disputes relating to construction of a contract [2]—when they have been properly submitted to the National Railroad Adjustment Board. We concluded that such an injunction does not fall within the prohibitions of the Norris-LaGuardia Act, 29 U. S. C. § 101 *et seq.*, because of the superseding purpose of the Railway Labor Act to establish a system of compulsory arbitration for this type of dispute, a purpose which might be frustrated if strikes could not be enjoined during the consideration of such a dispute by the Board. This case presents a further question as to nature of the relief which may be granted under the *Chicago River* rule—specifically, whether the injunction granted the Railroad may be qualified by conditions imposed by the District Court under traditional equitable considerations.[3]

If the District Court is free to exercise the typical powers of a court of equity, it has the power to impose conditions requiring maintenance of the *status quo*. Conditions of this nature traditionally may be made the price

---

ing conditions during pendency of the dispute before the Adjustment Board by ordering that the railroad restore the status quo, or, in the alternative, pay the employees the amount they would have been paid had changes in working conditions giving rise to the dispute not been made." 361 U. S. 810.

[2] See *Elgin, J. & E. R. Co.* v. *Burley*, 325 U. S. 711, 723; *Brotherhood of Railroad Trainmen* v. *Chicago River & Ind. R. Co.*, 353 U. S. 30, 33–34.

[3] We did not decide in *Chicago River*, and we do not decide here, whether a federal court can, during the pendency of a dispute before the Board, enjoin a carrier from effectuating the changes which gave rise to and constitute the subject matter of the dispute, independently of any suit by the railroad for equitable relief. As we read the order of the District Court, this case does not involve independent relief for the union.

of relief when the injunctive powers of the court are invoked and the conditions are necessary to do justice between the parties.[4] "The award of an interlocutory injunction by courts of equity has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result to the plaintiff. . . . [The court] will avoid . . . injury so far as may be, by attaching conditions to the award. . . ." *Yakus v. United States,* 321 U. S. 414, 440. "[I]t is the duty of a court of equity granting injunctive relief to do so upon conditions that will protect all . . . whose interests the injunction may affect." *Inland Steel Co.* v. *United States,* 306 U. S. 153, 157. Since the power to condition relief is essential to ensure that extraordinary equitable remedies will not become the engines of injustice, it would require the clearest legislative direction to justify the truncation of that power.

Such direction, if it exists, presumably must be derived from the Railway Labor Act itself, and since that Act contains no express provisions circumscribing the equitable powers of the court, such limitations, if any, must be created by clear implication.

The Court of Appeals found the limiting legislative direction in the provision of the Railway Labor Act granting exclusive primary jurisdiction over "minor disputes" to the National Railroad Adjustment Board. Its theory was that the conditions imposed by the District Court constituted a preliminary decision on the merits of the parties' dispute and therefore encroached upon the jurisdiction of the Board.

It is true that the federal courts ought not act in such a way as to infringe upon the jurisdiction of the Board,

---

[4] See 2 Pomeroy, Equity Jurisprudence, 51, 57–59 (5th ed. 1941); 1 Story, Equity Jurisprudence, §§ 69–76 (14th ed. 1918); *Central Kentucky Natural Gas Co.* v. *Railroad Comm'n,* 290 U. S. 264, 271.

*Order of Conductors* v. *Pitney*, 326 U. S. 561. But neither this principle nor the *Pitney* case itself leads us to the Court of Appeals' conclusion.

In *Pitney,* we held that the District Court in exercise of its equity powers ancillary to its jurisdiction as a railroad reorganization court under 11 U. S. C. § 205, should not have granted a permanent injunction finally determining the merits of a dispute which was within the jurisdiction of the Board, but that, instead, it should have withheld such relief pending a determination by the Board.

In the case at bar, however, there was no determination of the merits of the dispute by the District Court. Nothing in the record of the proceedings in the District Court suggests that any view on the merits was considered. Instead, the record affirmatively discloses that the district judge was quite aware that it was not his function to construe the contractual provisions upon which the parties relied for their respective positions on the merits. In sum, the judge was scrupulous to avoid encroaching upon the jurisdiction of the Board.[5]

The Court of Appeals apparently concluded that a decision on the merits was inherent in the very conditioning of the injunction. It is true that a District Court must make some examination of the nature of the dispute before conditioning relief since not all disputes coming before the Adjustment Board threaten irreparable injury

---

[5] The judge said at one stage of the proceeding,

"Now, let us see where we are. There is a contract. We have not analyzed the contract because it is useless for us to analyze it because regardless of what conclusion we reach about the provisions of that contract we have no right to enforce its provisions or deny its provisions. Those conditions can be determined first only by the Railroad Adjustment Act, . . . .

"This Court is without power to construe that contract, which the defendants claim has been broken by the company." R. 316–317.

and justify the attachment of a condition. To fulfill its function the District Court must also consider the hardships, if any, that would arise if the employees were required to await the Board's sometimes long-delayed decisions without recourse to a strike. But this examination of the nature of the dispute is so unlike that which the Adjustment Board will make of the merits of the same dispute, and is for such a dissimilar purpose, that it could not interfere with the later consideration of the grievance by the Adjustment Board.

Moreover, such an examination is inherent in the grant of the injunction itself. Yet it is settled, since *Chicago River*, that an injunction may issue to preserve the Board's jurisdiction. We think that, in logic, we must hold that the conditions are proper also, at least where they are designed not only to promote the interests of justice, but also to preserve the jurisdiction of the Board.

It is not difficult to perceive how the conditions imposed in this case could be deemed to serve to protect the jurisdiction of the Board. The dispute out of which the judicial controversy arose does not merely concern rates of pay or job assignments, but rather involves the discharge of employees from positions long held and the dislocation of others from their homes. From the point of view of these employees, the critical point in the dispute may be when the change is made, for, by the time of the frequently long-delayed Board decision, it might well be impossible to make them whole in any realistic sense. If this be so, the action of the district judge, rather than defeating the Board's jurisdiction, would operate to preserve that jurisdiction by preventing injury so irreparable that a decision of the Board in the unions' favor would be but an empty victory.

It is true that preventing the Railroad from instituting the change imposed upon it the burden of maintaining what may be a less efficient and more costly operation.

The balancing of these competing claims of irreparable hardship is, however, the traditional function of the equity court, the exercise of which is reviewable only for abuse of discretion. And although respondents maintain that there has been such an abuse in this case, scrutiny of the record does not persuade us that the evidence was insufficient to support the judge's action.

The judgment of the Court of Appeals is

*Reversed.*

MR. JUSTICE HARLAN and MR. JUSTICE STEWART, while agreeing with the Court that the District Court had power to condition the issuance of the injunction, would vacate the judgment of the Court of Appeals and remand the case to that court for consideration of respondents' contention that the District Court's action involved an abuse of discretion.