**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, Plaintiff,**

v.

**EASTERN AIRLINES, Defendant.**

**No. 87 Civ. 3958 (SWK).**

United States District Court,
S.D. New York.

Jan. 11, 1988.

174

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff originally filed an action seeking injunctive relief against defendant under the provisions of the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 *et. seq.* Defendant filed a motion to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). This Court dismissed the action holding that the alleged infractions by defendant constituted only a "minor" violation over which this Court does not have jurisdiction under the RLA. *I.A.M. v. Eastern Airlines*, No. 87 Civ. 3958, slip op. (S.D.N.Y. August 13, 1987) ("IAM I") [Available on WESTLAW, 1987 WL 16154]. The Court also noted that IAM had not shown any irreparable harm stemming from Eastern's acts and thus denied plaintiff's request for preliminary injunctive relief. *Id.* Plaintiff appealed, and the appeal is now pending before the Second Circuit.[1]

On November 30, 1987, while the appeal was pending, plaintiff filed a notice of motion with the Second Circuit seeking injunctive relief to prevent interference with the chief shop steward's performance of his union duties. Since this second motion for injunctive relief is allegedly based on new or additional facts, the Clerk of the Second Circuit would not accept the motion until this Court had ruled on it. *See* Rule of Appellate Procedure 8. Subsequently, this Court met with counsel and held a hearing to receive additional evidence.

## BACKGROUND

IAM and Eastern Airlines signed a collective bargaining agreement ("CBA") in May, 1985, that remains in force until December 31, 1987. The parties have apparently exchanged notices for contract changes pursuant to section six of the RLA, 45 U.S.C. § 156.[2] In IAM I, IAM

Kevin P. Quill, Long Island City, N.Y. for plaintiff.

Akin, Gump, Strauss, Hauer & Feld, Washington, D.C. by David P. Callet, David C. Tobin, for defendant.

1. The docket number on appeal is 87–7844.

2. While the court may issue injunctions to maintain the status quo during bargaining, plaintiff has not brought its request pursuant to that provision nor, as stated below, does it appear that the present dispute concerns rates of pay, rules or working conditions, the subject of § 6 bargaining.

alleged violations of the RLA at Kennedy International Airport and LaGuardia Airport. Eastern had moved chief shop steward Michael O'Connell to a smaller office at Kennedy and had requested that he work in the wheel and brake shop for a certain number of hours beginning June 1. Despite the request, O'Connell continued to work on union activities on a full-time basis and did not report for work at the wheel and brake shop, apparently with Eastern's consent. IAM also complained of Eastern activities at LaGuardia, but these are not relevant to the present discussion.

Plaintiff's present request for injunctive relief makes nearly identical claims based on new facts. IAM claims that Eastern has restricted the time available to shop stewards at New York airports for union-related work. IAM contends that Eastern has fired and relocated a number of shop stewards, increasing the burden on those shop stewards who remain. IAM alleges that conditions have materially changed since early summer when IAM I was filed. First, three shop stewards have been fired by Eastern in the past six months at Kennedy and LaGuardia. Second, due to shop closings and schedule changes, the number of shop stewards under O'Connell has dropped from twelve to three. Third, a larger number of layoffs has increased the shop steward's union work demands. *See* O'Connell Affidavit, Nov. 30, 1987; Testimony of O'Connell, Dec. 4, 1987, at pp. 16–17.

At the center of the controversy once again is Eastern's demand that chief shop steward O'Connell work in the wheel and brake shop. IAM alleges that, on November 5, 1987, Joe Moser, a temporary Eastern manager, notified O'Connell that he was to wear a uniform on a daily basis and to perform productive work in the wheel and brake shop. O'Connell allegedly told Moser that he needed to work on union business eight hours a day, and Moser responded that wearing the uniform would probably be sufficient. A few days later, O'Connell had another meeting with Moser and others at which Moser reiterated the request that O'Connell work in the wheel and brake shop. Michael Hennessey, a general foreman for Eastern, also requested that O'Connell submit daily time sheets. O'Connell submitted these time sheets on a handwritten form he devised and Eastern allegedly accepted them. On November 24, O'Connell spoke with both Moser and Hennessey, each of whom informed him that he was to report for work in the wheel and brake shop that morning. O'Connell was to work for approximately four or five hours.

O'Connell states that he understood these conversations to mean that he was to work every morning until noon in the wheel and brake shop, which would account for approximately five hours of his day since he begins work at 6:30 a.m. Hennessey allegedly told O'Connell that he was to report to the wheel and brake shop every morning and only there request to take time off as appropriate. O'Connell complained that requiring him to work on productive work at Eastern's request departed from a longstanding practice which allowed him to conduct union business on a full-time basis as necessary. O'Connell stated that this had been the practice for the thirteen years he had been at Eastern. Testimony of Michael O'Connell, Dec. 4, 1987, at p. 8.[3]

Eastern contends that it has not and will not deny union representatives time to work on union business, but asserts the right to require the chief shop steward to work on "productive" or operational work for Eastern when necessary. Eastern asserts that this policy is consistent with the CBA and that its policy has not changed in the recent past. *See* Affidavit of Paul Priest, Dec. 2, 1987. Moser stated in his affidavit that he never told O'Connell that

3. After noticing that O'Connell was wearing a neck brace and discovering that he was prescribed medication containing codeine, Moser instructed O'Connell to take off sick time while he was on codeine. Moser allegedly explained that Eastern did not allow its employees to work while taking such medication. Although O'Connell remained for five hours to conduct union business, Moser told him to mark the day off as sick leave, possibly because he did not report to the wheel and brake shop. O'Connell has not returned to work since that day.

he would have to work every day on Eastern work, but could continue to conduct union business as reasonably necessary, except when he was required to perform Eastern work. Paul Priest, the director of labor relations with I.A.M. for Eastern, reiterated this policy in his testimony, stating that O'Connell could work on union business as necessary, but that on any given day he might be required to perform Eastern work. Testimony of Paul Priest, Dec. 4, 1987, at p. 61.

## DISCUSSION

### Jurisdiction

The Railway Labor Act creates a complex administrative system designed to reduce interruptions in interstate commerce by promoting arbitration and mediation as dispute resolution mechanisms. *Rutland Railway Corp. v. Brotherhood of Locomotive Engineers*, 307 F.2d 21, 31 (2d Cir.1962), *cert. denied* 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963). As a threshold matter, this Court must determine whether it has subject-matter jurisdiction under the RLA to decide this dispute. Disputes under the RLA are characterized as either "major" disputes or "minor" disputes. *Independent Union of Flight Attendants v. Pan American*, 789 F.2d 139, 140 (2d Cir.1986) (*"IUFA"*). While federal courts have jurisdiction for certain purposes in major disputes, statutorily created adjustment boards have exclusive jurisdiction over minor disputes. *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 320, 326, 92 S.Ct. 1562, 1562, 1566, 32 L.Ed.2d 95 (1972); *see* 45 U.S.C. § 184 (creation of system, group or regional boards of adjustment).

Major disputes involve the formation or modification of collective bargaining agreements, *id.* at 141, whereas minor disputes concern grievances over the "meaning or proper application of a particular provision" in an existing collective bargaining agreement. *Id.* at 140 (citing *Elgin, J. & E.R. Co. v. Burley*, 325 U.S. 711, 723 & n. 16, 65 S.Ct. 1282, 1290 & n. 16, 89 L.Ed. 1886 (1945)). Courts have characterized disputes as minor if an existing collective

bargaining agreement is "reasonably susceptible" to the carrier's interpretation, whereas the dispute is major if the carrier's contractual justification is "obviously insubstantial". *Local 553, Transport Workers v. Eastern Airlines, Inc.*, 695 F.2d 668, 673 (2d Cir.1982).

As was true in June and July of 1987, the present dispute between the IAM and Eastern is a minor dispute and should be brought to the proper adjustment board for resolution consistent with the RLA. The claims that shop stewards have been wrongfully discharged, that the carrier has reduced the number of hours available to shop stewards for conducting union business and that the carrier has created havoc by laying off large numbers of workers in violation of seniority or bumping rights necessarily involve grievances under an existing collective bargaining agreement. *See IUFA, supra*, 789 F.2d at 141 (wrongful discharge claim is minor dispute); *Rader v. United Transp. Union*, 718 F.2d 1012, 1014 (11th Cir.1983) (seniority rights dispute is minor).

In the present case, Eastern asserts that its agreement with the IAM specifically authorizes assignment of productive (non-union) work to those chief shop stewards who are not specifically designated as full-time non-working shop stewards. O'Connell admits that he is not one of the full-time shop stewards authorized by the CBA. Testimony of Michael O'Connell, Dec. 4, 1987, at p. 26. While the alleged violations of the CBA may be serious, the IAM does not assert, nor does it appear, that Eastern has wholly abandoned or unilaterally altered the CBA as it affects rates of pay, rules or working conditions for the employees as a class. *See* 45 U.S.C. § 152 Seventh. Eastern has provided a plausible explanation for its actions consistent with the CBA and thus the dispute is minor.

This Court has only limited equitable power over cases involving minor disputes: "the judiciary can, however, take action to preserve a minor dispute for the Adjustment Board." *Local 553, supra*, 695 F.2d at 675. Such action should be taken only

when the injunction "would operate to preserve that [adjustment board] jurisdiction by preventing injury so irreparable that a decision of the Board in the union's favor would be but an empty victory." *Brotherhood of Locomotive Engineers v. Missouri–Kansas–Texas R.R. Co.*, 363 U.S. 528, 534, 80 S.Ct. 1326, 1330, 4 L.Ed.2d 1379 (1960). The courts of this Circuit have expanded on the Supreme Court's interpretation of the RLA, holding that a District Court may issue an injunction requiring a carrier to retain or restore the *status quo* in a minor dispute if the equities of the situation so demand. *Westchester Lodge 2186, etc. v. Railway Express Agency, Inc.*, 329 F.2d 748, 753 (2d Cir. 1964); *see also Local Lodge 2144, etc. v. Railway Express Agency, Inc.*, 409 F.2d 312, 318 (2d Cir.1969).[4]

■ Injunctive relief, however, is available only if plaintiff has already invoked the jurisdiction of the appropriate adjustment board. *International Association of Machinists and Aerospace Workers, AFL–CIO v. Compagnie Nationale Air France*, 433 F.Supp. 1087 (S.D.N.Y.), *aff'd* 573 F.2d 1291 (2d Cir.1977) (without opinion), *cert. denied* 439 U.S. 818, 99 S.Ct. 79, 58 L.Ed.2d 108 (1978) ("this Court cannot issue an injunction to protect the exclusive jurisdiction of a forum whose authority has not yet been invoked."). In this case, while plaintiff has filed grievances over the demand that O'Connell report for work at the wheel and brake shop, the record does not indicate that either party has demanded arbitration before an adjustment board. Thus, any injunctive relief is conditioned on and stayed until either party has, within a reasonable period of time, properly invoked the jurisdiction of the appropriate adjustment board.[5]

### Need For Injunctive Relief

■ Plaintiff has stated that the harm it would suffer if O'Connell could not continue to work on union business on a full-time basis would be irreparable. The evidence suggests that O'Connell's work load has increased greatly and will continue to do so in the near future. Plaintiff claims that defendant is laying off employees in violation of the CBA and without regard to their seniority rights, thus causing a large increase in the shop stewards workload. Testimony of Michael O'Connell, Dec. 4, 1987, at pp. 16–17. Unless these grievances can be filed in a timely fashion and with the proper documentation, plaintiff claims workers will not be able to find the new positions within Eastern to which they are entitled. *Id.* at p. 24. The shop steward has only ten calendar days to file a

---

**4.** The issuance of an injunction when a minor dispute is involved should be distinguished from the issuance of an injunction when a major dispute is involved, the situation that existed when the district court considered Local 553's motion in *Local 553, Transport Workers v. Eastern Airlines*, 544 F.Supp. 1315 (E.D.N.Y.), *modified* 695 F.2d 668 (2d Cir.1982). In that case, plaintiff sought a preliminary injunction. The district court decided that plaintiff had shown the existence of irreparable harm and likelihood of success on the merits, as is required in such motions. *Id.* at 1318, 1327, 1328. The "merits" which the court considered was the likelihood that plaintiff could establish that the dispute was "major" under the RLA. *Id.* at 1327.

In this case, this Court has held that the dispute is "minor" and thus plaintiffs cannot seek preliminary relief since by its very terms the decision of this Court requires the parties to resolve the dispute in another forum and since this Court cannot determine the ultimate merits of the case, those being whether Eastern has violated the CBA. *Cf. Guinness–Harp Corp. v. Jos. Schlitz Brewing Co.*, 613 F.2d 468, 471–72

(2d Cir.1980) (court cannot issue preliminary relief when plaintiff seeks enforcement of arbitration clause in contract pursuant to Federal Arbitration Act, 9 U.S.C. § 1–14, since the court cannot decide the ultimate merits of the case, those being reserved for the arbitrators). Instead, the Court can and, as discussed below, does grant final injunctive relief which is temporary in nature. *See Local 553, supra,* 695 F.2d at 676 n. 6 (court distinguishes between the temporary nature of a final injunction issued in a minor dispute pursuant to the RLA and the temporary nature of a preliminary injunction issued in a potentially major dispute).

**5.** While this Court could dismiss the motion since there is no evidence that the dispute is pending before the adjustment board, such action would unnecessarily waste judicial resources. Rather than dismiss and wait for one of the parties to invoke the adjustment board's jurisdiction, the Court will anticipate and encourage such a move by conditioning the requested relief on invoking the board's jurisdiction within a reasonable time.

grievance, and seven days to respond to the Eastern foreman's denial of the requested action. *Id.* at p. 17. O'Connell claims that the present load of grievances requires his full-time attention. *Id.* at pp. 16–24. Eastern has not suggested that O'Connell is fabricating the amount of union business to which he must attend. Since requiring him to work on Eastern business while grievances go unprocessed could extinguish the rights of those who have claims against Eastern, the potential harm is severe and irreparable.[6] While the adjustment board may be able to offer some relief to workers wrongly discharged or who have been wronged in some other manner, such relief may not come for years. *See Local Lodge 2144, etc., supra,* 409 F.2d at 317 (action against employees by carrier that board may eventually remedy may nonetheless be irreparable harm since the board may not provide relief for many years). Based on the evidence before this Court, plaintiff has established that injunctive relief is required to prevent "injury so irreparable that a decision of the Board in the union's favor would be but an empty victory." *Bro. of Locomotive Engineers, supra,* 363 U.S. at 534, 80 S.Ct. at 1330.

Despite the foregoing, this Court recognizes that its power to interfere in this situation is very limited. Consequently, this Court enjoins Eastern Airlines from requiring O'Connell to work on productive work when he claims that his union business requires his full-time attention. If it appears that O'Connell is abusing his privileges by stating he has union work to do when he in fact does not, defendant should petition this Court for a modification of its order. This relief is specifically conditioned on either party's invocation of the adjustment board's jurisdiction within a reasonable period of time. The plaintiff is ordered to proceed with the administrative remedies provided for in the RLA as expeditiously as possible.

**CONCLUSION**

IAM has alleged a number of violations by Eastern of an existing collective bargaining agreement. Accordingly, the dispute between the parties is a minor one over which the arbitration boards have exclusive jurisdiction. Eastern has apparently attempted to limit the amount of time which its employees spend on union business. Eastern's demand that O'Connell not continue to work full-time on union business marks a change in longstanding practice. The plaintiffs have satisfied this Court that preliminary injunctive relief is warranted since O'Connell's failure to spend his full energies on union business, given the present circumstances, would result in irreparable harm. This Court issues this injunction to preserve the minor dispute for the adjustment board. Consequently, plaintiff's motion is granted and the parties are directed to resolve this dispute through the offices of the appropriate adjustment board.

SO ORDERED.

---

**6.** While O'Connell could not point to any grievances which have not been timely processed, *see* Testimony of Michael O'Connell, Dec. 4, 1987, at p. 32, the Court notes that Eastern has not yet enforced its demand that the chief shop steward perform productive work. If Eastern were to enforce its demand, and in light of the present conditions at Kennedy, the harm could indeed be grievous by the time any administrative relief were made available.