**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, Plaintiff-Appellant,**

v.

**EASTERN AIR LINES, INC., Defendant-Appellee.**

**No. 665, Docket 87–7844.**

United States Court of Appeals, Second Circuit.

Argued Feb. 1, 1988.

Decided May 24, 1988.

Kevin P. Quill, Long Island City, N.Y., for plaintiff-appellant.

David P. Callet, Washington, D.C. (David C. Tobin, Mark J. Schwartz, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., Robert A. McCullough, Director–Labor Law, Eastern Air Lines, Miami, Fla., of counsel), for defendant-appellee.

Before WINTER, PRATT and ALTIMARI, Circuit Judges.

WINTER, Circuit Judge:

Plaintiff's appeal and defendant's motion to vacate involve an ongoing dispute between the International Association of Machinists and Aerospace Workers ("IAM") and Eastern Air Lines ("Eastern") over the working conditions of the IAM's chief shop stewards at two New York airports. The IAM appeals both from the district court's dismissal of its complaint against Eastern alleging violations of the IAM–Eastern collective agreement and from the denial of injunctive relief. Eastern moves to vacate an injunction issued by Judge Kram after the IAM proffered new facts but while the IAM's appeal was pending in this court. *See International Ass'n of Machinists & Aerospace Workers, AFL–CIO v. Eastern Air Lines*, 677 F.Supp. 173 (S.D.N.Y.1988). We affirm the initial denial of injunctive relief but hold that Judge Kram did not abuse her discretion in subsequently granting an injunction.

## BACKGROUND

Shop stewards assist union members in the processing of grievance claims under the IAM–Eastern collective agreement. In that capacity, Michael O'Connell, the IAM's

chief shop steward at Kennedy International Airport, had been permitted by Eastern to work full-time on union matters for thirteen years, although he was not one of the fifteen chief stewards explicitly designated to do so by the collective agreement. On June 8, 1987, the IAM filed a complaint in the Southern District of New York alleging, among other things, that Eastern had violated the collective agreement by assigning O'Connell to the wheel and brake shop for productive work. The complaint alleged Eastern further breached the agreement by relocating the IAM's office space and moving union files at LaGuardia Airport. The IAM claimed that these actions deprived it of "past privileges" protected by Article 20(b) of the collective agreement and thereby violated the Railway Labor Act, 45 U.S.C. §§ 151–188 (1982).

On August 13, 1987, Judge Kram dismissed the IAM's complaint. She found that while Eastern did request O'Connell to report to work on June 1, "O'Connell has been permitted ... to continue his union activities fulltime," that the "IAM has not specifically shown which, if any, activities would be damaged if O'Connell were not to engage in union work full-time," and that the "IAM has not shown that Eastern has denied the union access to its files nor that Eastern officials have looked into any confidential union material contained therein." The IAM appealed from that decision.

On November 30, 1987, while its appeal was pending, the IAM sought to file a motion in this court. The motion alleged new facts and sought an injunction preventing any interference with O'Connell's union duties. Personnel in our clerk's office directed the IAM to file the motion with the district court, presumably because of Fed.R.App.P. 8(a), which provides that "[a]pplication for a stay of the judgment or order of a district court pending appeal, ... or for an order suspending, modifying, restoring or granting an injunction during the pendency of an appeal must ordinarily be made in the first instance in the district court."

The IAM thereupon filed the motion in the district court. The motion alleged that working conditions at the New York airports had changed significantly since August and that these changes now justified injunctive relief. Specifically, the IAM claimed that three shop stewards had been dismissed, and that the number of shop stewards reporting to O'Connell had been reduced from twelve to three as a result of shop closings and schedule changes. The IAM further claimed that O'Connell had been informed by Eastern on November 24 that he would have to do productive work at the wheel and brake shop for approximately four or five hours each day, even though the demand for the assistance of shop stewards in processing grievances had increased due to a large number of layoffs claimed by the IAM to violate the collective agreement.

On January 11, 1988, the district court issued an injunction preventing Eastern "from requiring O'Connell to work on productive work when he claims that his union business requires his full-time attention." 677 F.Supp. at 178. The order was entered without prejudice to Eastern's petitioning for a modification of the order if it appeared that O'Connell was "abusing his privileges by stating he has union work to do when he in fact does not."[1] *Id.* The injunction did not maintain the status quo pending disposition of the present appeal by this court. Instead, it provided the IAM with relief pending final disposition of O'Connell's grievance by the system board of adjustment. Judge Kram found that such an injunction was needed in order to ensure that employee grievances would be processed in accord with the mandatory procedures specified in the collective agree-

---

**1.** The district court conditioned the injunction on one of the parties properly invoking the jurisdiction of the system board of adjustment, as it was not clear from the record whether either party had done so. *See International Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Compagnie Nationale Air France,* 433 F.Supp. 1087, 1091 (S.D.N.Y.) ("this Court cannot issue an injunction to protect the exclusive jurisdiction of a forum whose authority has not been invoked"), *aff'd mem.,* 573 F.2d 1291 (2d Cir.1977), *cert. denied,* 439 U.S. 818, 99 S.Ct. 79, 58 L.Ed.2d 108 (1978).

ment. Without O'Connell's full-time attention, she feared, grievances would go unheard because Eastern would be able to claim procedural default as to those that had been improperly processed. *Id.* The district court further found that "Eastern's demand that O'Connell not continue to work full-time on union business marks a change in longstanding practice." *Id.*

## DISCUSSION

 The Railway Labor Act, which applies to air carriers, *see* 45 U.S.C. §§ 181–82 (1982), establishes separate procedures for resolving major and minor contractual disputes. "Major" disputes concern the formation or modification of collective bargaining agreements, while "minor" disputes involve the application or interpretation of existing agreements. *See Air Cargo Inc. v. Local Union 851, Int'l Bhd. of Teamsters,* 733 F.2d 241, 245 (2d Cir.1984). The resolution of minor disputes is within the exclusive jurisdiction of labor-management system boards of adjustment created pursuant to 45 U.S.C. § 184 (1982). *See Local 553, Transp. Workers Union of Am. v. Eastern Air Lines,* 695 F.2d 668, 673–75 (2d Cir.1982). Federal courts have no power, therefore, to resolve disputes over the meaning of collective agreements in the airline industry, and, to the extent that the IAM's complaint simply sought relief based on its interpretation of the collective agreement, Judge Kram's order of dismissal was correct. *See Independent Union of Flight Attendants v. Pan American World Airways,* 789 F.2d 139, 141 (2d Cir.1986).[2]

 However, the Supreme Court has authorized federal courts to preserve the status quo pending resolution of a minor dispute by a system board of adjustment, where an injunction "rather than defeating

the Board's jurisdiction, would operate to preserve that jurisdiction by preventing injury so irreparable that a decision of the Board in the unions' favor would be but an empty victory." *Brotherhood of Locomotive Eng'rs v. Missouri–Kansas–Texas R.R.,* 363 U.S. 528, 534, 80 S.Ct. 1326, 1330, 4 L.Ed.2d 1379 (1960); *see Westchester Lodge 2186, Bhd. of Ry. & S.S. Clerks v. Railway Express Agency, Inc.,* 329 F.2d 748, 753 (2d Cir.1964) (federal court can issue injunction "to restore *status quo* in a minor dispute if the court's discretion is soundly exercised to preserve the primary jurisdiction of the Adjustment Board"). Judge Kram nevertheless did not abuse her discretion in denying such injunctive relief on August 13, in light of her findings that the IAM had failed to demonstrate that the system board of adjustment would not be able to provide the relief sought and that the IAM would not suffer irreparable injury in the interim. *See id.*

 We now turn to the January 11, 1988 injunction issued after this appeal had been taken. We address first the question whether this injunction conflicts with the rule that, once a notice of appeal has been filed, a district court may take actions only "in aid of the appeal or to correct clerical errors," *Leonhard v. United States,* 633 F.2d 599, 609–10 (2d Cir.1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981), and may not "adjudicate substantial rights directly involved in the appeal." *Newton v. Consolidated Gas Co.,* 258 U.S. 165, 177, 42 S.Ct. 264, 267, 66 L.Ed. 538 (1922); *see Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982) (filing of notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal").

---

**2.** The IAM's conclusory claims of anti-union animus do not establish subject-matter jurisdiction. *See Pan Am,* 789 F.2d at 142 (intervention justified "only where it is clear that the employer's conduct has 'been motivated by anti-union animus'") (quoting *Tello v. Soo Line R.R.,* 772 F.2d 458, 462 (8th Cir.1985)). As in *International Association of Machinists & Aerospace Workers v. Northwest Airlines,* 673 F.2d 700, 712 (3d Cir.1982), "[n]o detailed statement of facts sup-

porting these conclusions appear in any of IAM's submissions, although IAM had ample opportunity to provide such materials." For example, O'Connell's June 8, 1987 affidavit stated that there had been a "substantial increase in discipline, suspensions and discharges" since Texas Air Corporation's purchase of Eastern, but did not provide any statistics to support this claim.

The personnel in our clerk's office who directed the IAM to file its motion in the district court were presumably relying upon Fed.R.App.P. 8(a), which provides in relevant part:

> Application for a stay of the judgment or order of a district court pending appeal, ... or for an order suspending, modifying, restoring or granting an injunction during the pendency of an appeal must ordinarily be made in the first instance in the district court. A motion for such relief may be made to the court of appeals or to a judge thereof, but the motion shall show that application to the district court for the relief sought is not practicable, or that the district court has denied an application, or has failed to afford the relief which the applicant requested, with the reasons given by the district court for its action.

Although Appellate Rule 8 describes the *procedure* to be followed in seeking an injunction pending appeal, Fed.R.Civ.P. 62(c) regulates the *power* of district courts to grant such relief. *See* 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 208.02 (2d ed. 1987). Rule 62(c) provides in relevant part:

> *Injunction Pending Appeal.* When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

This rule has been narrowly interpreted to allow district courts to grant only such relief as may be necessary to preserve the status quo pending an appeal where the consent of the court of appeals has not been obtained. *See New York v. Nuclear Regulatory Comm'n,* 550 F.2d 745, 758–59 (2d Cir.1977); *Ideal Toy Corp. v. Sayco Doll Corp.,* 302 F.2d 623, 625 (2d Cir.1962); 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 62.05 (2d ed. 1987).

The relief granted by the district court in the instant case entailed more than preservation of the status quo pending the appeal from the dismissal of the initial action. Rather, it enjoined Eastern from altering O'Connell's work arrangements pending a decision by the system board of adjustment in order to preserve that board's jurisdiction. Because the relief granted did more than maintain the status quo pending this appeal, a request for leave of this court to make the motion in the district court was necessary. As we stated in *Sayco Doll,*

> Once the appeal is taken, however, jurisdiction passes to the appellate court. Thereafter the appellant is not usually entitled as of right to present new evidence or argument to the trial court, which in the exercise of a sound discretion will exercise jurisdiction only to preserve the *status quo* as of the time of appeal. Appellant's proper procedure is then to request leave of the court of appeals to proceed in the lower court. He need not even dismiss his appeal, for we have always been ready to suspend proceedings while new matter was introduced below. But absent permission of the appellate court to reopen, sound judicial administration demands that unless the judge is satisfied that his order was erroneous he shall use his power under Rule 62(c) only to preserve the status of the case as it sits before the court of appeals.

302 F.2d at 625 (citation omitted).

The parties, however, consented at oral argument to our treating the IAM's motion in the district court as a new action and Eastern's motion to vacate the injunction as an appeal. We believe this agreement disposes of whatever jurisdictional problems, if any, inhere in the procedure followed. Alternatively, we believe we have the power to grant leave *nunc pro tunc* to the district court to reconsider its denial of injunctive relief for purposes of preserving the system board of adjustment's jurisdiction in light of the IAM's proffer of new evidence. Adopting this view, Judge Kram's grant of relief was based on the original complaint, as modified by the submission of new evidence. We therefore address the merits of the injunction.

Judge Kram found that an injunction was needed because the new evidence indicated that employee grievances would not be preserved for the system board of adjustment unless O'Connell worked full-time on union matters. Under the IAM–Eastern collective agreement, the shop steward has only ten days to file grievances, and only seven days to respond to management's denial of the action requested. O'Connell testified that this process required him to fill out extensive forms and to conduct sometimes difficult investigations in short spans of time, and that the present load of grievances demanded his full-time attention. He was nevertheless informed by Eastern on November 24, 1987 that he was expected to do productive work in the wheel and brake shop for four or five hours per day. Eastern responded by noting that O'Connell was told by Eastern that he would not be denied "union time" and that all grievances to date had been processed within the time limits.

Judge Kram did not abuse her discretion in enjoining Eastern from changing O'Connell's work status. *See Missouri–Kansas–Texas R.R.*, 363 U.S. at 534, 80 S.Ct. at 1330. The IAM offered evidence that grievances could not be processed as required by the collective agreement if O'Connell's status were changed, and employees would thus be deprived of the system board of adjustment's review. This evidence—the increased number of claims, the reduced number of shop stewards, and the longstanding prior practice regarding O'Connell—was much stronger than that supporting the IAM's original request for relief. Eastern's offer of some free "union time" to O'Connell is irrelevant in light of Judge Kram's finding that O'Connell's full-time attention was needed to process grievances. Eastern's observation that all grievances had been processed to date is also irrelevant in light of that finding.

## CONCLUSION

We affirm the district court's August 13, 1987 denial of injunctive relief and affirm her issuance of the January 11, 1988 injunction.