CAYUGA INDIAN NATION OF NEW YORK, Plaintiff,

v.

VILLAGE OF UNION SPRINGS; Town of Springport; and County of Cayuga New York, Defendants.

No. 5:03–CV–1270.

United States District Court, N.D. New York.

May 20, 2004.

153

Sonnenschein Nath & Rosenthall LLP (Raymond J. Heslin, Esq., of counsel), New York City, for Plaintiff.

Hiscock & Barclay, LLP (Alan R. Peterman, Esq., of Counsel), Syracuse, NY, for

Defendants Village of Union Springs, Town of Springport and County of Cayuga.

## MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

On April 27, 2004, the Village of Union Springs, Town of Springport, and County of Cayuga, New York ("Defendants") filed a Notice of Appeal regarding, among other things, the Memorandum–Decision and Order filed on April 23, 2004, permanently enjoining them from enforcing local zoning and land use laws against the Cayuga Indian Nation of New York ("the Nation") regarding use of property it owns within Defendants' municipal boundaries ("the Property"). Defendants now move, pursuant to Fed.R.Civ.P. 62(c), for an injunction pending appeal enjoining the Nation from further construction, demolition, and/or renovation work at the Property. The Nation opposes. In the alternative, the Nation requests that the Defendants be required to post a substantial bond in the event a stay is granted.

Oral argument was heard on May 13, 2004 in Utica, New York. Decision was reserved. Familiarity with the April 23, 2004 decision, as well as the Memorandum–Decision and Order issued on November 28, 2003, is assumed. *See Cayuga Indian Nation of New York v. Village of Union Springs,* 317 F.Supp.2d 128, 2004 WL 884589 (N.D.N.Y.2004); *Cayuga Indian Nation of New York v. Village of Union Springs, et al.,* 293 F.Supp.2d 183 (N.D.N.Y.2003).

## II. DISCUSSION

### A. Standard

 Fed.R.Civ.P. 62(c) provides, in relevant part:

> When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

Although generally, "once a notice of appeal has been filed, 'it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal,'" *Kidder, Peabody & Company, Inc. v. Maxus Energy Corp.,* 925 F.2d 556, 564 (2d Cir.1991), *quoting Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982), pursuant to Fed.R.Civ.P. 62(c), "a district court may grant injunctive relief after a proper notice of appeal has been filed, but only when it is necessary to preserve the status quo pending appeal," *id.,citing International Ass'n of Machinists & Aerospace Workers v. Eastern Air Lines, Inc.,* 847 F.2d 1014, 1018 (2d Cir.1988).[1]

---

**1.** The Nation argues that this motion should be denied outright because a stay would result in (1) Defendants receiving all the relief requested by their counterclaim, and (2) a dissolution of the injunction being appealed from. The cases that support the Nation's first argument deal primarily with situations where, unlike here, granting a stay would result in some affirmative measure that could not be revoked, such as, for example, the deportation of a non-citizen. *See Jimenez v. Barber,* 252 F.2d 550, 553 (9th Cir.1958). *See also McHale v. Cornell University,* No. 85–CV– 1281, 1985 U.S. Dist. LEXIS 14541, at *4 (N.D.N.Y. Oct. 25, 1985). *But see Reynolds Metals Co. v. Secretary of Labor,* 453 F.Supp. 4, 7 (W.D.Va.1977) (court refused to grant a stay where to do so would allow indefinite suspension of a warrant to inspect movant's plant for OSHA violations, and where none of the factors for granting a stay weighed in movant's favor). The Nation's second argument, that the stay would effectively dissolve the injunction appealed from, thereby exceeding this court's jurisdiction under Rule 62(c), also does not carry much force. It is true

■ Pursuant to Rule 62(c), in order "[t]o determine whether a stay of an order pending appeal is appropriate, a court must evaluate the following factors:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

*Rodriguez v. DeBuono,* 175 F.3d 227, 234 (2d Cir.1999), *quoting Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987). Defendants, as movants, have the heavy burden of establishing that the aforementioned factors weigh in favor of a stay. *See Handberry v. Thompson,* No. 96 Civ. 6161, 2003 WL 1797850, at *1 (S.D.N.Y. April 4, 2003), *citing Cooper v. Town of East Hampton,* 83 F.3d 31, 36 (2d Cir.1996). *See also Juan v. Rowland,* No. Civ. H–89–859, 2001 WL 263395 (D.Conn Feb. 9, 2001); *Schwartz v. Dolan,* 159 F.R.D. 380, 383 (N.D.N.Y.1995), *vacated in part on other grounds,* 86 F.3d 315 (2d Cir.1996).

■ When deciding whether a stay is warranted, it is important to keep in mind that "[t]he necessary 'level' or 'degree' of

possibility of success will vary according to the court's assessment of the other [stay] factors." *Mohammed v. Reno,* 309 F.3d 95, 101 (2d Cir.2002), *quoting Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977). That is to say, where, for example, the stay applicant's showing of a likelihood of success is not very strong, a higher quantum of irreparable injury is required, and conversely, a strong showing of a likelihood of success is required where irreparable injury is not very evident. *See id.* For this reason, the likelihood of success factor will be discussed last.

**B. Analysis**

**1. Irreparable Injury to Defendants**

■ Defendants must establish that, in the absence of a stay pending appeal, they will be irreparably injured. Here, Defendants argue, citing *New York v. Shinnecock Indian Nation,* 280 F.Supp.2d 1 (E.D.N.Y.2003), that the Nation's construction and operation of a gaming facility on the Property will have a substantial impact on the quality of life in the Village of Union Springs (the Village) and that such harm is imminent. Defendants also argue, citing *Kansas v. United States,* 249 F.3d 1213 (10th Cir.2001), that they will be irreparably harmed by the prospect of losing sovereignty over the Property.[2] Both

---

that Rule 62(c) "has been narrowly interpreted to allow district courts to grant only such relief as may be necessary to preserve the status quo pending an appeal." *See International Ass'n of Machinists & Aerospace Workers v. Eastern Air Lines,* 847 F.2d 1014, 1018 (2d Cir.1988). Here, the underlying injunction enjoins defendants from enforcement of their local zoning and land use laws against the Nation regarding their use of the Property. A stay of the injunction would not result in its dissolution, but merely suspend construction or renovation activities on the Property pending appeal, thereby preserving the status quo in accordance with Rule 62(c). Therefore, for the foregoing reasons, further analysis is necessary before deciding whether a stay is warranted here.

2. In their reply papers, Defendants note their disagreement with language from the April 23, 2004 decision which stated, in support of the finding that Defendants failed to make the requisite showing of irreparable harm regarding their cross motion for a preliminary injunction, that "Defendants' contention that the Village will be deprived of 'possible regulation and control' of the Property is speculative." *Village of Union Springs,* at 150, 2004 WL 884589, at *16. Defendants argue that, to the contrary, the threat of deprivation of their jurisdiction over the Property was clearly not speculative, especially considering that the effect of that very decision was to make such deprivation a reality. This argument misconstrues the quoted language, the basis of which Defendants are well aware. In sup-

of these cases, however, are distinguishable.

In *Shinnecock*, the court enjoined a non-federally recognized Indian tribe from construction of a Class III gaming facility on a parcel of land it owned in the Town of Southampton that was not within the tribe's reservation and was not taken into trust by the United States. *See* 280 F.Supp.2d at 3. In finding that the plaintiff there established irreparable harm, the court recognized that the "likely harm to the pristine community of Southampton could be devastating" if the tribe were not required to adhere to state and local environmental laws, specifically noting plaintiffs' argument that the tribe may need to install a waste water treatment facility on the property. *See id.* at 5. No such concern has been raised here. In fact, Defendants only argue that increased traffic congestion threatens to harm the quality of life in the Village, and refer to arguments advanced in a previous motion regarding the *"possible* problems with utility services and the *possible* adverse effect that the location of the gaming facility, 300 yards from the high school, would have on the Village." *See* Mem. of Law in Supp. of Defs.' Mot. for an Inj. Pending Appeal, at 2–3, *citing* Aff. of Edward A. Trufant, Oct. 29, 2003, at ¶ 21 (emphasis added). More-over, the court in *Shinnecock* expressed concern regarding the tribe's intent to conduct class III gambling on the property when to do so without a tribal-state compact would be a violation of state law as well as the Indian Gaming Regulatory Act (IGRA). *See id.* Here, the Nation plans to operate a class II gaming facility, which, unlike a class III facility, will not require such a compact. *See* 25 U.S.C. § 2710(d)(1)(C). Also, the Nation, unlike the tribe in *Shinnecock*, is a federally recognized tribe and is in possession of a gaming ordinance issued by the National Indian Gaming Commission (NIGC) pursuant to IGRA. *See* § 2710(b)(2). It is also important to note that, unlike the proposed facility at issue in *Shinnecock*, which included plans for a casino with, at the very least, 900 to 1000 gaming machines and 60 table games,[3] here, the Nation plans to operate only 100 electronic bingo machines in its facility. *See Shinnecock*, 280 F.Supp.2d at 3 n. 1. Moreover, Defendants fail to adequately explain how the Nation's facility will generate more traffic than any other business in the Village.

The Tenth Circuit's holding in *Kansas v. United States* is likewise distinguishable. There, the court affirmed a district court's order granting a motion for a preliminary

port of their cross motion, Defendants cited a section of IGRA which prohibits gaming on lands acquired by the Secretary of the Interior (the Secretary) in trust for the benefit of an Indian tribe after October 17, 1988, unless certain exceptions apply. *See* 25 U.S.C. § 2719. Defendants went on to note that both a decision by the Secretary to take land into trust as well as a decision regarding any exceptions to the cited IGRA provision require input from the state and local governments involved. Although Defendants admitted that the Nation had not applied for trust status regarding the Property, they nonetheless argued that they were threatened with a deprivation of "possible regulation and control" over the Property due to their inability to be heard at some future date should the Nation ever submit such an application. The speculative nature of that argument was, and still is, very apparent. The trust status of the Property was not an issue to be decided by the April 23, 2004 decision, and as such, was wholly irrelevant to the conclusion reached therein, to wit, that Defendants do not have jurisdiction to regulate the Nation's activities on the Property because it is Indian Country pursuant to 18 U.S.C. § 1151(a).

3. In its complaint, the State of New York contended that the Shinnecock Nation planned "as many as 1,000 slot machines, more than 100 gaming tables, a food court, an entertainment stage, and a high-stakes bingo hall." *Shinnecock*, 280 F.Supp.2d at 3.

injunction to stay all activities by an Indian tribe relating to gaming on the property at issue. *See Kansas,* 249 F.3d at 1221. The underlying lawsuit arose after the NIGC determined that said property was "Indian land" within the meaning of IGRA. *See id.* at 1220. In deciding the motion for a preliminary injunction, the district court found that plaintiff met the "likelihood of success on the merits" element, ostensibly because it concluded that the NIGC's determination was "arbitrary and frivolous." *Id.,* at 1221. Before reaching that element of plaintiff's motion, the Tenth Circuit found that plaintiff there made the required showing of irreparable harm, stating that "because the State of Kansas claims the NIGC's decision places its sovereign interests and public policies at stake, we deem the harm the State stands to suffer as irreparable if deprived of those interests without first having a full and fair opportunity to be heard on the merits." *Id.* at 1227. The procedural posture of this case is very different. On a motion for summary judgment, the Property here was declared Indian Country pursuant to 18 U.S.C. § 1151(a) and Defendants were enjoined from enforcing their zoning laws or ordinances to regulate the Nation's activities thereon. *See Village of Union Springs,* at 151–52, 2004 WL 884589 at *18. Unlike in *Kansas,* where the court was concerned about a deprivation of the state's sovereignty interests without affording it a full and fair opportunity to be heard on the merits of its claim, here, defendants had such an opportunity when they opposed the Nation's motion for summary judgment.

Most importantly, twice previously in this litigation Defendants failed to make the requisite showing of irreparable harm in order to prevail on their separate motions for a preliminary injunction. *See Village of Union Springs,* at 150, 2004 WL 884589, at *16; *Village of Union Springs,* 293 F.Supp.2d at 195–198. Where, as

here, the order stayed involves an "injunction, a principal element of which is a finding of irreparable harm that is imminent, it is logically inconsistent, and in fact a fatal flaw, to subsequently find no irreparable nor even serious harm to the [p]laintiff[ ] pending appeal." *Rodriguez,* 175 F.3d at 234–235.

For the foregoing reasons, Defendants have failed to show that they will be irreparably injured absent a stay.

### 2. *Substantial Injury to the Nation*

■ Defendants must also establish that, in the event of a stay pending appeal, the Nation will not be substantially injured. Defendants aim to meet this burden by arguing merely that the Nation will suffer "minimal economic loss" since construction activities have only recently restarted. Not surprisingly, the Nation claims it will suffer "enormous" injury in the event of a stay, via economic loss as well as the loss of its sovereignty rights relating to their use of the Property.

In a letter submission regarding the Nation's previous motion for a preliminary injunction, counsel for the Nation indicated that gaming activities to be conducted on the Property would net the Nation a minimum daily profit of $14,000 to $17,000. *See* Aff. of Alan Peterman, Jan. 20, 2004, Ex. U. Defendants cited this letter, without disputing the accuracy of its contents, in support of one of their arguments against the Nation's motion for summary judgment. *See Village of Union Springs,* at 146–47, 2004 WL 884589, at *14.

It is important to keep in mind that Defendants, as the movants, bear the burden of establishing that the Nation will not be substantially injured in the event of a stay. Defendants sole argument in this regard is refuted by their own prior submissions in this matter. Moreover, Defendants have not addressed the issue of the

effect a stay would have on the Nation's sovereignty over the Property.

Under these circumstances, Defendants have not made the requisite showing of a lack of substantial injury to the Nation in the event of a stay.

### 3. *The Public Interest*

Defendants argue the public interest here weighs in favor of a stay, citing the policy of the State of New York to prohibit gambling except in certain circumstances, the need to preserve the quality of life in the Village, and the prevention of an increase in public expenditures which will result if the Nation is allowed to operate a gaming facility on the Property.

The Nation, on the other hand, cites the federal policy of encouraging tribal self governance and economic development through gaming. Moreover, the Nation disputes the relevance of the state's policy regarding gambling since federal, not state law, clearly applies to govern its gaming activities on the Property.

■ Finally, the Nation argues that Defendants' contentions regarding increased public expenditures are irrelevant, citing *Schwartz, supra. Schwartz* and the cases it follows found that economic loss was insufficient evidence of irreparable harm, not that economic loss was not to be considered when weighing the public interest.[4]

■ Nonetheless, it is clear that the public interest here lies with the Nation. As a federally recognized tribe, the Nation's gambling activities will be governed by federal law, and thus, the "overriding goals" of the United States government to further tribal self sufficiency and economic development should control. *See New*

*Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 335, 103 S.Ct. 2378, 2386–87, 76 L.Ed.2d 611 (1983). *See also California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 216, 107 S.Ct. 1083, 1092, 94 L.Ed.2d 244 (1987). Defendants have not established that the quality of life in the Village will be significantly harmed by the Nation's activities to warrant setting aside the overriding federal goal of encouraging tribal economic development, albeit temporarily, to enjoin it from continuing activities on the Property.

Likewise, Defendants' reference to the public's interest in preventing an expenditure increase does not overcome the federal interest in encouraging tribal economic development. Defendants have not identified with any specificity the amount of the anticipated increase in expenditures, and only define such expenditures as those which relate to policing the traffic that will allegedly be generated by the Nation's facility. As previously noted, Defendants do not adequately explain how the facility will generate more traffic than any other business in the Village, *see supra* at 156, further weakening their current argument.

Therefore, the public interest here weighs in favor of denying Defendants' motion for a stay.

### 4. *Likelihood of Success on the Merits*

A brief discussion of the arguments regarding the appropriate standard for evaluating this last factor is in order, as the parties have placed a great deal of emphasis on same in their written submissions and at the hearing regarding the pending motion.

---

4. "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough to show irreparable harm." *Schwartz,* 159 F.R.D. at 384, *quoting Mow-* *bray v. Kozlowski,* 725 F.Supp. 888, 890–891 (W.D.Va.1989) (internal quotation and citation omitted). *See also Reynolds Metals Co. v. Secretary of Labor,* 453 F.Supp. 4, 7 (W.D.Va. 1977).

Citing *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841 (D.C.Cir.1977), Defendants argue that they do not need to demonstrate the likelihood that their appeal will be successful, only that the determination being appealed involves substantial and novel legal questions. *See also Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 740 (2d Cir.1953) (footnote omitted). In *Holiday Tours,* the D.C. Circuit Court of Appeals recognized that "tribunals may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo be maintained." *Id.* at 844–845.

Defendants argue that, in particular, the issue of whether exceptional circumstances exist to warrant imposition of their local zoning and land use laws to regulate the Nations' activities on the Property, decided against them in the April 23, 2004 order, is one of first impression. *See Village of Union Springs,* at 144–48, 2004 WL 884589 at *12–15. Moreover, defendants correctly note that the *City of Sherrill* decision, upon which determinations at issue in the April 23, 2004 order were based, is presently pending before the Supreme Court on a petition for certiorari. *See Oneida Indian Nation of New York v. City of Sherrill,* 337 F.3d 139 (2d Cir. 2003). Moreover, many rulings in the *Cayuga* Land Claim, also relied on in the April 23, 2004 order, are currently pending an appeal before the Court of Appeals for the Second Circuit. *See Cayuga Indian Nation of New York v. Pataki,* 188 F.Supp.2d 223 (N.D.N.Y.2002).

However, the Nation argues that the appropriate standard, set forth by the Supreme Court in *Hilton* and followed overwhelmingly by courts in this circuit, is a strong likelihood of success on appeal, and not, as Defendants contend, substantial and novel legal questions presented on appeal. *See Hilton,* 481 U.S. at 776, 107 S.Ct. at 2119; *Mohammed,* 309 F.3d at 100–102; *Spargo,* 2003 WL 2002762 at *1. *But see Cayuga Indian Nation of New York v. Pataki,* 188 F.Supp.2d 223, 253 (N.D.N.Y.2002), *quoting Holiday Tours,* 559 F.2d at 844–845. The Nation also contends that since Defendants have not advanced any new arguments for injunctive relief in support of the present motion, they cannot establish a strong showing of a likelihood of success on appeal. *See Schwartz,* 159 F.R.D. at 383.

Nonetheless, whatever the appropriate standard is under this prong of the four factor analysis, it is not to be considered in a vacuum. An order maintaining the status quo is only appropriate when, in addition to a likelihood of success on appeal, "when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant." *Holiday Tours,* 559 F.2d at 844 (emphasis added). *See also Mohammed,* 309 F.3d at 101. Despite Defendants' argument that the determinations being appealed present significant and novel legal questions, they are unable to establish that they will be irreparably harmed unless their motion for a stay is granted, nor have they established that the Nation would not be substantially injured in the event of a stay. Finally, the public interest here weighs in favor of denying a stay.

## III. CONCLUSION

Regardless of the significance of the legal questions presented on appeal, or the likelihood of success on the merits, consideration of all four factors in deciding whether to grant a stay overwhelmingly requires rejection of same.

Defendants' motion for an order staying the underlying injunction pending the out-

come of an appeal will be denied. The Nation's request for a bond is moot.

Therefore, it is

ORDERED that Defendants, the Village of Union Springs, Town of Springport, and County of Cayuga, New York's motion pursuant to Fed.R.Civ.P. 62(c) for an order enjoining plaintiff, the Cayuga Indian Nation of New York, from performing any additional construction work and/or construction related work on the Property pending a determination of Defendants' appeal regarding this matter to the United States Court of Appeals for the Second Circuit is DENIED.

IT IS SO ORDERED.